WILLIAM F. HACKETT, Plaintiff, *v.* NELSON EXPRESS & STORAGE COMPANY, Defendant.

Supreme Court, Trial Term, New York County, April 1, 1937.

*Michael A. Castalde [Jacques W. Bacal* of counsel], for the plaintiff.

*Michael J. Esposito,* for the defendant.

Collins, J. This action against a warehouseman for the wrongful conversion of stored household goods and furnishings presents one of those troublesome problems where the letter of the warehousemen's lien law (Gen. Business Law, § 118), under which the goods and furnishings were sold, admittedly was not strictly complied with, but the non-compliance did not produce the damage here complained of. Rather, it was due to the plaintiff's own carelessness and neglect, and in no wise to the defendant's wrongdoing that plaintiff did not have actual knowledge — he had *legal notice* — of the sale which it is claimed constituted the conversion.

In September, 1931, the plaintiff stored the household goods and furnishings with the defendant, giving as his address the Harvard Club, 27 West Forty-fourth street, New York city. No storage having been paid for fourteen months, despite the plaintiff's promises to pay, a notice that the goods would be sold to satisfy the charges on December 20, 1932, was properly addressed to the plaintiff by registered mail at the Harvard Club. The registered notice was received at the club on November 26, 1932, and the receiving clerk was required to place in the plaintiff's private mail box a notice that there was a registered letter for him at the desk. The plaintiff did not, however, call for or receive the registered letter until the day before the trial, when it was produced by subpœna served on the club.

The sale was advertised in the *Journal of Commerce* for December twenty-second, and not for December twentieth, as stated in the registered notice. The advertisement was published on December seventh and again on December twenty-first. The sale was held on the twenty-second, and the goods, of the agreed reasonable market value of $650, brought $266.33.

There is no proof that the plaintiff ever saw the advertisement or knew of the sale until after the event. He was not present at the sale on the twenty-second, nor did he appear at the designated sales place on the twentieth.

Other facts, some conceded, some disputed, entered the case, but they are not pivotal or vital. The essential facts are free from controversy.

Section 118 of the General Business Law provides the method for warehousemen's lien sales. It requires that notice of sale be delivered by registered mail or in person to the last known residence or place of business of the person to be notified. A registered notice, thus addressed, though not actually received, suffices. (*Moline v. Queensboro Storage Warehouse, Inc.*, 155 Misc. 360.) The notice must contain: (a) An itemized statement of the warehouseman's claim. (b) A brief description of the goods. (c) A demand for pay-

ment within not less than ten days. (d) A statement that unless the claim is paid within the designated time the goods will be advertised for sale and sold by auction at a specified time and place.

The section provides further that after the time specified for payment has expired, an advertisement of the sale shall be published once a week for two successive weeks. The sale shall be held not less than fifteen days from the day of the first publication.

Did this sale comply with these requirements?

(1) The bill which accompanied the notice recited that it was for " storage due on furniture amounting to $169.50." It added an " auction expense at 20%, $33.80." Even if the latter item was improper as not " due at the time of the notice," it seems to me that the notice was sufficient. Certainly it put the plaintiff on notice concerning the amount claimed by the defendant.

(2) The notice described the goods generally as " a trunk, bag, box, furniture, rugs, linen, carpets, paintings or something stored by you." Under the rule of Lake v. Dye (232 N. Y. 209) the description, though a blanket one, met the design of the requirement.

(3) The bill, dated November twenty-second, demanded that the plaintiff " kindly remit " the $169.50, and the notice set the sale for December twentieth. This satisfied the requirement of the statement specified in subdivision (d).

(4) Even if the publication did not appear " for two consecutive weeks," it did appear at two different times, and the fifteen-day period contemplated by the law between the time of the first publication and the time of sale had elapsed. Certainly the intent if not the preciseness of this aspect of the law was followed. The circumstance that the first advertisement appeared on the seventh and the second on the twenty-first did not harm or prejudice the plaintiff in the slightest. In a community of the size and population of New York, the theory that the advertisement is additional notice to the plaintiff of the sale is sheer fiction. To expect or even hope that a person whose goods are advertised for sale will see the advertisement and thereby be enabled to protect himself beseeches belief in miracles. Rather, the function of this portion of the statute is not so much to notify the plaintiff as to attract competitive buyers. It would seem, therefore, that this mission of the statute was fulfilled by the advertisement which was published and is challenged here.

Quite true, the statute seeks to protect the person storing the goods. It is in derogation of the common law and must be construed accordingly. Encroachments are dangerous and should be discouraged. Liberal construction must not reduce the statute to

impotency. At the same time, the statute seeks a consummation, an end. The meticulous requirements constitute a means to that end, the end being that the person affected have so many days notice of the proposed sale and the amount claimed, so that he can do what he deems necessary to protect his interests; also, as indicated, that prospective or potential buyers be invited to the sale, thus widening the market, insuring the presence or knowledge of buyers and achieving a larger yield. It makes the sale an open and competitive one, public instead of private, and lessens the dangers of fraud and collusion.

The law does not compel a pointless cleavage to form. Rigidity, apart from reason and purpose, is not the desideratum. Form is the route, not the destination. A harmless omission to pursue the statute is not fatal. The omission is cured or disregarded unless the omission contrive to damage.

Thus in *Lake* v. *Dye* (*supra*) the plaintiff was notified that a sale would be held on January seventeenth. In fact it was held on the twentieth, for which date it was advertised. It was pertinently held (at p. 212): " The fact that there was a discrepancy between the date of the sale in the notice and the date of the sale in the advertisement was immaterial in view of the failure of the plaintiff to be harmed thereby or be present on either of the dates."

So here, the irregularities in form bore no relation to the substance or to the result. There was an absence of causal connection between the irregularities and the grievance. The irregularities did not produce or even slightly contribute to the result. Even had the statute been complied with punctiliously, the result would have been the same. If the notice had set the sale for the twenty-second and if the advertisement had been in every respect proper and regular, the plaintiff would not personally have received the notice or seen or heeded the advertisement. The result must be attributed to the plaintiff's failure to call at the club for his mail. This defendant should not be charged with such omission.

Let it not be assumed that this wholesome statute is to be slighted or treated with impiety. But the law cannot be viewed apart from the peculiar facts which weave the setting.

The defendant extended credit to the plaintiff over a period of months. Indeed, nothing was ever paid on the account. The defendant even paid out cash at the plaintiff's instance and request. There was a substantial compliance with the spirit of the statute; the purpose of the law was met. No fraud or collusion or bad faith is even hinted at. The conduct of the sale itself is not impugned. Only technicalities are relied on, technicalities which cost the plaintiff nothing.

Section 62 of McKinney's Statutes and Statutory Construction significantly provides: "The intent of the Legislature is the primary object sought in the interpretation of statutes; and, to secure this object, the literal meaning of the words used must yield. Whenever the intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction be contrary to its letter; for a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers. And a case within the intention of a statute is within the statute, though an exact literal construction would exclude it. It is a familiar maxim of law, *Qui haeret in littera haeret in cortice* — He who considers merely the letter of an instrument goes but skin deep into its meaning. All statutes are to be construed according to their meaning, not according to the letter. In statutory exposition the reason, the spirit of the law, is above mere cavil about words. As was said by Plowden, ' It is not the words of the law, but the internal sense of it, that makes the law, and our law (like all others) consists of two parts, viz., body and soul; the letter of the law is the body of the law, and the sense and reason of the law is the soul of the law, *quia ratio legis est anima legis*. And the law may be resembled to a nut, which has a shell and a kernel within, the letter of the law represents the shell, and the sense of it, the kernel and as you will be no better for the nut, if you make use only of the shell, so you will receive no benefit from the law if you rely upon the letter, and as the fruit and profit of the nut lies in the kernel, and not in the shell, so the fruit and profit of the law consists in the sense, more than in the letter. And it often happens, that when you know the letter, you know not the sense, for sometimes the sense is more confined and contracted than the letter, and sometimes if is more large and extensive.' But this doctrine does not authorize the courts to disregard arbitrarily the plain import of the language used in a statute. On the contrary, the courts will not extend a statute to cases within its intent or restrict the application of its general words, unless the context or surrounding circumstances indicates that the literal wording does not express the actual intent of the lawmakers."

And section 82 declares: " If a fair construction can be found which gives force to the whole act and to the legislative intent, and does not work an injustice, it must necessarily be adopted. An interpretation of an act should be avoided which would injuriously affect the rights of others, and that sense should be attached to its provisions which will harmonize its objects with the preservation and enjoyment of all existing rights."

Mindful of the salutariness of the statute, I am persuaded that substantial justice will be done by declining to penalize the defendant for a result it did not produce. I am convinced that this is a case which calls for the invocation of the wise and reasonable doctrine that " The courts will disregard the letter of the law and follow its spirit, when the letter causes hardship or injustice." (Id. § 82.)

It is unfortunate that the plaintiff lost his property, but he should have been more vigilant. His loss is derived from his carelessness and not from defendant's violation of the law. I am constrained to give judgment for the defendant.