487 F.2d 378
 Siegfried HERNANDEZ, Plaintiff-Appellant,
v.
EUROPEAN AUTO COLLISION, INC., et al., Defendants-Appellees.
The Attorney General of the State of New York,
Intervenor-Appellee, Auto Body Craftsmen's Guild,
Inc., Intervenor-Appellee.
 No. 406, Docket 72-1977.
 United States Court of Appeals,
Second Circuit.
 Argued March 5, 1973.
Decided June 29, 1973.
Rehearing and Rehearing En Banc Denied Sept. 7, 1973.
 
 Kalman Finkel, New York City (The Legal Aid Society, Civil Appeals Bureau, New York City, on the brief), and John E. Kirklin, New York City, for plaintiff-appellant.
 Louis J. Lefkowitz, Atty. Gen. of N. Y., pro se intervenor-appellee.
 Before LUMBARD and TIMBERS, Circuit Judges, and WYZANSKI, District Judge.*
 WYZANSKI, District Judge:
 This case involves a challenge under the due process clause of the Fourteenth Amendment to Sections 184, 201, 202 and 204 of the New York Lien Law, McKinney's Consol. Laws, c. 33.
 Those sections provide:
 Sec. 184. Lien of bailee of motor vehicles, motor cycles, motor boats, or aircraft
 A person keeping a garage, . . . for the storage, maintenance, keeping or repair of motor vehicles or of motor cycles as defined by the vehicle and traffic law, . . . and who in connection therewith stores, maintains, keeps or repairs any motor vehicle . . . at the request or with the consent of the owner, . . . has a lien upon such motor vehicle . . . for the sum due for such storing, maintaining, keeping, or repairing of such motor vehicle . . . and may detain such motor vehicle . . . at any time it may be lawfully in his possession until such sum is paid . . .
 Sec. 201. Notice of sale
 Before such sale is held the lienor shall serve a notice upon the owner with due diligence within such county, if such owner can be found when such lien arose . . . Such notice shall contain a statement of the following facts:
 1. The nature of the debt or the agreement under which the lien arose, with an itemized statement of the claim and the time when due;
 2. A brief description of the personal property against which the lien exists;
 3. The estimated value of such property;
 4. The amount of such lien, at the date of the notice.
 It shall also require such owner or person to pay the amount of such lien, on or before a day mentioned therein, not less than ten days from the service thereof, and shall state the time when and place where such property will be sold, if such amount is not paid. If the agreement on which the lien is based provides for the continuous care of property, the lienor is also entitled to receive all sums which may accrue under the agreement, subsequent to the notice and prior to payment or a sale of the property; and the notice shall contain a statement that such additional sum is demanded. Such notice shall be verified by the lienor to the effect that the lien upon such property is valid, that the debt upon which such lien is founded is due and has not been paid, and that the facts stated in such notice are true to the best of his knowledge and belief.
 Sec. 202. Sale to be advertised
 Each sale of personal property . . . to satisfy a lien thereon shall be at public auction to the highest bidder, and shall be held in the city or town where the lien was acquired. After the time for the payment of the amount of the lien specified in the notice required to be served by the preceding section, notice of such sale shall be published once a week, for two consecutive weeks, in a newspaper published in the town or city where such sale is to be held, and such sale shall be held not less than fifteen days from the first publication; if there be no newspaper published in such town, such notice shall be posted at least ten days before such sale in not less than six conspicuous places therein. Such notice shall describe the property to be sold and shall state the name of the person for whose account the same is then held and the time and place of such sale . . .
 Sec. 204. Disposition of proceeds
 Of the proceeds of such sale, the lienor shall retain an amount sufficient to satisfy his lien, and the expenses of advertisement and sale. The balance of such proceeds, if any, shall be held by the lienor subject to the demand of the owner, or his assignee or legal representative, and a notice that such balance is so held shall be served personally or by mail upon the owner of the property sold.
 Plaintiff was the owner of a Volkswagen automobile. He filed against three defendants-a corporation operating a garage and repair shop, its president, and a New York licensed auctioneer-a complaint seeking a declaratory judgment against the statute, an injunction against defendants, and damages from them.
 The District Court dismissed the complaint for failure to state a cause of action, on the ground that the challenged statute as allegedly here applied was not unconstitutional. The following are the allegations of the complaint, which, in effect, has been held to be demurrable.
 February 10, 1972 plaintiff's car suffered damage in a collision. The following day plaintiff asked the corporate defendant's employee, whose first name is Marcel, to tow the car to its garage and to estimate the cost of repair, but not to repair until plaintiff's insurance company had estimated the damage and until the corporate defendant had made contact with plaintiff.
 February 24 Marcel asked plaintiff if the corporation should repair. Plaintiff replied negatively because the insurer had not yet appraised.
 Later plaintiff secured from the garage corporation an estimate (dated February 18) that repairs would cost $1545.58.
 In March, Marcel telephoned plaintiff that his car had been repaired, and asked if he wanted to pick it up. Plaintiff replied that he had not authorized repairs.
 Subsequently, representatives of plaintiff's insurer reported to plaintiff that the fair cost of repairs was $750 and that the garage had erroneously charged for parts which were neither damaged nor replaced.
 April 7 defendant president of the garage company wrote, and April 13 plaintiff received, a letter to plaintiff that $950 was due the company for repair and $235 for storage, and that if plaintiff did not pay his bill and pick up the car, defendant company would sell the car pursuant to the statutory procedure with respect to foreclosing a garageman's lien.
 April 13 plaintiff wrote to defendant company for an itemization.
 April 17 defendant company wrote plaintiff that unless he paid his alleged indebtedness of $1311.50 by April 28, his car would be sold on May 19 at public auction under the direction of defendant auctioneer, pursuant to sections 201-204 of the New York Lien Law. The letter attached a partial itemization, including $950 for repairs. Presumably, the balance of the $1311.50 was for storage.
 At plaintiff's solicitation, an Assistant Attorney General of New York, and The Legal Aid Society then futilely sought to mediate the dispute.
 May 12 plaintiff filed in the District Court a complaint pleading substantially, if unnecessarily verbosely, the aforesaid allegations. Relying on the court's jurisdiction under 28 U.S.C. Sec. 1343(3), he sought threefold relief: a declaratory judgment that, as here applied, Sections 184, 200-202, and 204 of the New York Lien Law violated the due process clause of the Fourteenth Amendment, a permanent injunction against the enforcement of those statutory provisions, and compensatory and punitive damages. He prayed for a three-judge district court, pursuant to 28 U.S.C. Secs. 2281, 2284.
 The Attorney General of New York and the Auto Body Craftsmen's Guild petitioned the District Court to intervene as defendants. The Court granted a temporary injunction effective only until it determined the case, allowed the petition for intervention, denied plaintiff's request for a three-judge court on the ground that the complaint did not name a state officer as defendant, and ultimately dismissed the complaint because the court regarded the Constitution as not requiring notice and opportunity to be heard on the amount claimed as a debt as a condition preliminary to sale under the statutory procedure.
 Plaintiff moved this Court for an order staying the defendants' sale of his car pending appellate hearing. Circuit Judge Kaufman denied the stay.
 We are informed that, following Circuit Judge Kaufman's denial of a stay, the auctioneer actually sold the car.
 We now come to the questions of law presented by the District Court's dismissal of the complaint.
 Clearly the District Judge correctly determined that a three-judge court was not appropriate in this case, because, as he noted, none of the defendants is a state officer. There is no reason for us to say more than has been well said already by Judge Costantino on this point.
 We next consider whether plaintiff has standing to attack those provisions of Section 184 of the New York Lien Law which allow a garageman to detain until he is paid his storage and his repair charges as well. Plaintiff admits that he told the garageman to pick up his car. Hence he voluntarily incurred at least some storage charges. Indeed, his car became subject to reasonable storage charges and to any common law lien, as well as to a statutory lien for those amounts. More important for present purposes, plaintiff, up to the time he filed his complaint, never asked to have the car back, nor tendered the amount of reasonable storage charges. Accordingly, he is in no position to challenge the statutory lien, even if it were true, which we do not suggest is the case, that the garageman was demanding excessive storage, as well as repair charges. Plaintiff's challenge to the detention provisions of the New York Lien Law is, therefore, moot. Consequently, we do not rule upon the constitutionality of Section 184 of the New York Lien Law.
 The situation is different with respect to plaintiff's challenge to the sale provisions of the New York Lien Law. This has several aspects. The garageman gave notice of a forthcoming sale; so plaintiff was not injured by the notice aspect of the statute as here applied. Consequently, we do not rule upon Section 202 of the New York Lien Law.
 However, perhaps what plaintiff means is that he was not given notice of a hearing in court before the sale. This is just another way of claiming that the statute does not require, what it is contended that the due process clause commands, that before effectuating a sale to foreclose a garageman's lien a garageman must afford in a judicial proceeding an opportunity to a car owner to have a judicial determination of the amount allegedly owed, at least when, as here, the owner disputes the amount. This is the nub of the present case because it is a non-moot challenge to Section 204 of the New York Lien Law. The fact that the sale has already occurred obviously does not make moot the prayers for a declaratory judgment and for damages.
 We are of the view that, upon a full finding of the facts, which has not yet occurred because the complaint was dismissed for failure to state a cause of action, it may appear that the garage company and the plaintiff were in dispute as to the former's charges for storage and repair, that in this posture, without taking the initiative to afford plaintiff opportunity for judicial ascertainment of the asserted debt, the garage defendant authorized the auctioneer, pursuant to New York Lien Law Sec. 204, to sell plaintiff's car, that the auctioneer sold the car, and that the auctioneer then turned over to the garage company the whole proceeds in partial satisfaction of the amount the garage company had claimed was owing to it for storage and repair charges. If those should be the facts found, then we would conclude that plaintiff has, under the doctrines enunciated in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), a tenable contention that Section 204 of the New York Lien Law as applied here was repugnant to the due process clause of the Fourteenth Amendment and that he is entitled to a declaratory judgment and perhaps to compensatory and possibly punitive damages. We have not overlooked what was said below about the state procedures, such as replevin, which were open to plaintiff to have forestalled the sale. But we are persuaded that, even if those remedies would have been effective, they do not validate Section 204 of the New York Lien Law so as to give defendants the right to sell plaintiff's property without either judicial ascertainment of the amount owed by plaintiff to the garage company or plaintiff's admission or contractual stipulation as to the amount due. However, it is manifestly not proper for us to make final rulings on those points before the facts are found by the District Court after a plenary trial. All that we now do is to reverse the dismissal of the complaint and to remand the case to the District Court with directions to try the case on its merits.
 Reversed and remanded.
 
 
 1
 TIMBERS, Circuit Judge, joined by LUMBARD, Circuit Judge, (concurring):
 
 
 2
 I concur in the judgment of the Court and in the opinion of Judge Wyzanski to the extent that they reverse the order of the district court dismissing the complaint and remand for trial on the issue of the constitutionality of the sale provisions of the New York Lien Law as applied to the sale of appellant's automobile. I would go further, however, and state what I believe to be the applicable constitutional principles. Indeed, I would direct the district court to declare the sale provisions unconstitutional as applied if appellant is able to prove his allegations.
 
 
 3
 Like Judge Wyzanski, in my view the key question raised by this complaint is whether the summary sale procedure provided for in N.Y. Lien Law Sec. 200, et seq. (McKinney Supp. 1972) passes constitutional muster. While I agree that if appellant can prove the facts outlined in Judge Wyzanski's opinion, appellant will have "a tenable contention that Section 204 of the New York Lien Law as applied here was repugnant to the due process clause of the Fourteenth Amendment", I think the issue is so important and close as to warrant more guidance from us to the district court.
 
 
 4
 On the issue of the statute's detention provision, N.Y. Lien Law Sec. 184 (McKinney Supp. 1972), I agree with Judge Wyzanski that appellant's claim is no longer justiciable, but for somewhat different reasons.
 
 I.
 
 5
 The district court, in holding that due process does not require the opportunity for a hearing prior to the sale of personal property by a garageman pursuant to the Lien Law, relied primarily on Magro v. Lentini Bros. Moving & Storage Co., 338 F.Supp. 464 (E.D.N.Y.1971), aff'd per curiam on opinion below, 460 F.2d 1064 (2 Cir.), cert. denied, 406 U.S. 961 (1972).[1] There, the court upheld the constitutionality of the UCC's warehouseman's lien provision, N.Y.U.C.C. Sec. 7-210 (McKinney 1964), which permits a warehouseman to enforce a statutory lien by sale of the bailed goods without a prior judicial hearing. The basis for that conclusion was the court's reading of Sniadach v. Family Finance Corp., 395 U.S. 337 (1969), which it held confined the requirement of a pre-seizure hearing to goods "the deprivation of which will drive the debtor 'to the wall'." 338 F.Supp. at 468. Where a debtor voluntarily parts with possession of goods for a reasonably long period of time,[2] the district court reasoned in Magro, the deprivation of those goods cannot be said to be of sufficient severity to bring the case within Sniadach.
 
 
 6
 Regardless of the validity of that view at the time of the district court's decision in Magro, the "necessities" distinction surely was put to rest in Fuentes v. Shevin, 407 U.S. 67 (1972). In Fuentes, the Supreme Court disapproved the district courts' rejection of plaintiffs' constitutional claim
 
 
 7
 "on the ground that the goods seized from them-a stove, a stereo, a table, a bed, and so forth-were not deserving of due process protection, since they were not absolute necessities of life. The courts based this holding on a very narrow reading of Sniadach v. Family Finance Corp., supra, and Goldberg v. Kelly, [397 U.S. 254], in which this Court held that the Constitution requires a hearing before prejudgment wage garnishment and before the termination of certain welfare benefits. They reasoned that Sniadach and Goldberg, as a matter of constitutional principle, established no more than that a prior hearing is required with respect to the deprivation of such basically 'necessary' items as wages and welfare benefits.
 
 
 8
 This reading of Sniadach and Goldberg reflects the premise that those cases marked a radical departure from established principles of procedural due process. They did not. Both decisions were in the mainstream of past cases, having little or nothing to do with the absolute 'necessities' of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect. . . . While Sniadach and Goldberg emphasized the special importance of wages and welfare benefits, they did not convert that emphasis into a new and more limited constitutional doctrine." 407 U.S. at 88-89 (footnotes omitted).
 
 
 9
 See also, e. g., Bell v. Burson, 402 U.S. 535, 539 (1971).
 
 
 10
 Thus, if Magro is to have the continued validity with which the district court in the instant case credited it, that would be permissible only on the assumptions that (1) the "necessities" distinction was unnecessary to the decision, and (2) the critical factor in Magro was the voluntary transfer of the property-a factor also present in the instant case. My reading of the Magro opinion makes the first assumption appear dubious at best. Nor, it seems to me, does the second withstand close scrutiny, even if we were to assume that the court's reference to the voluntary transfer was only to bolster the inference that the bailed goods did not come within Sniadach.
 
 
 11
 In the instant case, I should assume that the reason for focusing on the voluntariness of appellant's delivery of his car to the garageman is that it is the deprivation of tangible property that calls due process into play. As I read the cases, however, it is the deprivation of a significant property interest that gives rise to the requirement of a prior opportunity to be heard. E. g., Boddie v. Connecticut, 401 U.S. 371, 379 (1971); Fuentes v. Shevin, supra, 407 U.S. at 86. Here, it is true that appellant in a sense voluntarily delivered his car for the purpose of temporary storage and perhaps eventual repair. But it cannot be seriously contended that at the same time he voluntarily relinquished his property interest in the car. Indeed, the law is clear that, while a bailment creates a new property interest in the bailee, it does not divest the bailor of his continuing interest and title. E. g., Maudling v. United States, 257 F.2d 56, 60 (9 Cir. 1953). I find little, if any, significance in the fact that the initial delivery of the car was voluntary. I would not distinguish this case from the seizure cases on that ground.
 
 
 12
 The critical question therefore would appear to be whether the deprivation of which appellant complains, although not involving a seizure, is nevertheless encompassed within the interdiction of the Fourteenth Amendment. Following the Supreme Court's analysis in Fuentes, the inquiry should proceed along these lines. First, the Fuentes Court noted that the replevy of the goods at issue did involve a deprivation of a possessory interest. Second, it said that under Sniadach and Bell the temporary, non-final nature of the deprivation was not decisive of the right to a prior hearing of some kind. Third, it held that the uncertainty of the ultimate right to possession did not negate that right: "It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods." 407 U.S. at 87. Fourth, as stated above, the Court rejected any limitation of the due process clause to items denominated "necessaries". Finally, it recognized the existence of certain "extraordinary situations" that might justify the summary seizure of property while postponing notice and an opportunity to be heard. E. g., Fahey v. Mallonee, 332 U.S. 245 (1947) (impending bank failure); Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594 (1950) (misbranded drugs). Since the replevin statutes challenged in Fuentes were not limited to such special circumstances and since the goods replevied were entitled to the protections of the Fourteenth Amendment, the Court held the statutes were unconstitutional in their failure to afford the basic elements of due process before the deprivation occurred.
 
 
 13
 A like analysis, in my view, would lead to the same result here. The sale provisions of the Lien Law permits the permanent deprivation of a significant property interest without a prior hearing; the statutory language is not confined to extraordinary situations in which such summary action might be justifiable. Comparing the Lien Law here to the replevin statutes struck down in Fuentes, there would appear to be an even greater disregard for the basic elements of due process. The sale of the liened goods, for example, completely extinguishes the possibility of any future right of repossession in the event of ultimate success on the merits; replevin, in contrast, is a provisional remedy intended to preserve the integrity of the goods pending trial on the underlying claim. Moreover, a common replevin provision[3] requires that an action on the merits be commenced contemporaneously by the creditor; the Lien Law, on the other hand, permits the enforcement of the lien, and the liquidation of the goods, without any judicial review at any stage.[4]
 
 
 14
 In short, while Fuentes dealt with a statute and business setting different in certain respects from the instant case, the policies and constitutional principles articulated in Fuentes strongly point to the conclusion here that the enforcement provision of the New York Lien Law is unconstitutional in that it permits the deprivation of a significant property interest without the opportunity for some sort of prior hearing. Thus, in my view, if appellant is able to prove the facts alleged in his complaint, he would be entitled to the relief requested.
 
 
 15
 In stating my views as I have, I am not unmindful of the substantial stake that garagemen, repairmen, and others have in the prompt enforceability of their liens. As Judge Mishler pointed out in Magro, saddling these persons with the requirement of instituting a legal action before they may dispose of their security "would serve no other purpose in the vast majority of cases than to increase the cost of the services and to weaken the . . . security." 338 F.Supp. at 468. That argument, however, has been foreclosed by Fuentes, where the Court stated:
 
 
 16
 "[O]rdinary hearing costs are no more able to override due process rights in the creditor-debtor context than in other contexts.
 
 
 17
 In any event, the aggregate cost of an opportunity to be heard . . . should not be exaggerated. For we deal here only with the right to an opportunity to be heard. Since the issues and facts decisive of rights . . . may very often be quite simple, there is a likelihood that many defendants would forgo their opportunity, sensing the futility of the exercise in the particular case. And, of course, no hearing need be held unless the defendant, having received notice of his opportunity, takes advantage of it." 407 U.S. at 92-93 n. 29 (emphasis that of the Court).
 
 
 18
 While the enforcement of a lien by means of a public sale of the liened goods is a time-honored and necessary remedy for a garageman, it is not inconsistent with that remedy to afford the owner an opportunity for some sort of a prior judicial determination of the lien and of the amount of the debt.[5] The absence of that opportunity makes the statute a party to the deprivation of a significant property interest without the right to the basic protections of the Fourteenth Amendment. Fuentes and other recent Supreme Court decisions seem to me to require considerably more.
 
 II.
 
 19
 With regard to the Lien Law's detention provision, N.Y. Lien Law Sec. 184 (McKinney Supp. 1972), I agree with Judge Wyzanski that the voluntary and undisputed incurrence of some reasonable storage charges precludes appellant from contesting the fact of the lien resulting therefrom. While I also agree that appellant's challenge to the detention provision is no longer justiciable despite the dispute as to the amount of the debt, I reach that conclusion by somewhat different reasoning than that of Judge Wyzanski.
 
 
 20
 Primarily, I do not see why the failure to demand the car or to tender the amount of reasonable storage charges should make any difference. In the first place, appellant should not be penalized for neglecting to do what certainly would have been a futile act. And second, had the car been returned to appellant pending his constitutional challenge to the detainer provision, his action then would have been subject to the same mootness objection that we sustained in Kerrigan v. Boucher, 450 F.2d 487 (2 Cir. 1971).
 
 
 21
 I would ground our decision instead on the fact that, in the present posture of the case, there is no relief available to appellant that will improve his position or make him whole for the injury allegedly sustained as a result of the operation of the detention provision. A declaratory judgment is not available where, despite an allegation of past wrongdoing, there is no continuing live controversy-here, in the sense of a continuing detention. Golden v. Zwickler, 394 U.S. 103, 108 (1969). By the same token, an injunction would provide appellant with no more than a pyrrhic assurance that, if a similar conflict were to arise again with this same garageman, he would be granted an opportunity to be heard before his car is sold. Cf. Magro v. Lentini Bros. Moving & Storage Co., supra, 338 F.Supp. at 469.
 
 
 22
 There remains to be considered appellant's claim for damages. That claim consists of a request for (1) $66 per week for each week he was deprived of the use of his automobile; (2) $1000 for mental and emotional distress allegedly caused by appellees; and (3) $1000 punitive damages from two of the appellees. If I understand this claim correctly, the amount of damages attributed to the detention, as opposed to the sale, of appellant's car may fairly be characterized as nominal. Unlike such cases as Powell v. McCormack, 395 U.S. 486, 498 (1969), this is not a cause of action for which the remaining claim for damages remains "hotly contested". Rather, as in Kerrigan, the detention claim is one by which appellant essentially is seeking an adjudication of the unconstitutionality of Sec. 184. "Not having found a justiciable controversy permitting a declaration, the claim for nominal damages, which is clearly incidental to the relief sought, cannot properly be the basis upon which a court should find a case or controversy where none in fact exists." Kerrigan v. Boucher, supra, 450 F.2d at 489-90.
 
 
 23
 But these considerations clearly are not applicable to appellant's challenge to the sale provision. As to that, appellant alleges that he is continuing to suffer from an unconstitutional act, for which declaratory, injunctive, and monetary relief remain available.
 
 
 24
 For the reasons stated above, I concur in the judgment of the Court and in the opinion of Judge Wyzanski to the extent that they reverse the order dismissing the complaint and remand for trial on the issue of the constitutionality of the sale provisions of the New York Lien Law as applied to the sale of appellant's automobile.
 
 
 25
 I am authorized to state that Judge Lumbard concurs in this opinion.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 The district court also relied on Dininny v. Reavis, 100 Misc. 316 (Sup.Ct., N.Y.Co., 1915), aff'd, 178 App.Div. 922, 165 N.Y.S. 97 (1st Dept. 1917). There, in what apparently is the only state court ruling on the constitutionality of the Lien Law's enforcement procedure, the court found the availability to the owner of liened property of numerous legal options to protect his interest as satisfying the requirements of due process. The basis for that view, however, seems to have been undermined by Fuentes v. Shevin, 407 U.S. 67, 83 n. 13 (1972), where the Court noted that "if a [businessman] knows that he is dealing with an uneducated, uninformed consumer with little access to legal help and little familiarity with legal procedures, there may be a substantial possibility that a summary seizure of property-however unwarranted-may go unchallenged, and the [businessman] may feel that he can act with impunity."
 In any event, in light of the Supreme Court's recent due process decisions (e. g., Sniadach v. Family Finance Corp., 395 U.S. 337 (1969); Bell v. Burson, 402 U.S. 535 (1971); Fuentes v. Shevin, supra), the authority of a 58-year old constitutional decision rendered by a state trial court is of doubtful force.
 
 
 [2]
 In Magro, plaintiffs, having been evicted from their apartment, placed their furniture in storage under a contract with defendants that called for a minimum period of storage of three months
 
 
 [3]
 E. g., Fla.Stat.Ann. Sec. 78.07 (Supp. 1972-73) ("Before a replevy writ issues, plaintiff shall file a bond with surety payable to defendant to be approved by the clerk in at least double the value of the property to be replevied conditioned that plaintiff will prosecute his action to effect and without delay . . . .")
 
 
 [4]
 The fact that the owner may institute a suit for damages or other appropriate relief does not, in the uneven situation normally involved in enforcement of a lien, satisfy the requirements of due process. See note 1, supra
 
 
 [5]
 The flexibility inherent in the due process clause should need no further explication than it has received in the recent cases. E. g., Fuentes v. Shevin, supra, 407 U.S. at 96-97 and n. 33. The test as to whether the Constitution has been offended is not in the form of hearing but rather in whether the available hearing provides a real opportunity for ascertainment of the "validity, or at least the probable validity, of the underlying claim . . . before the [alleged debtor] can be deprived of his property." Sniadach v. Family Finance Corp., supra, 395 U.S. at 343 (Harlan, J., concurring) (emphasis by Justice Harlan). Any form of hearing that provides that opportunity would appear to satisfy the due process requirement