Shirley Herriott **BROOKS** and Gloria Jones, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

**FLAGG BROTHERS, INC.,** Individually and as representative of a class of all others similarly situated, et al., Defendants.

No. 73 Civ. 4050 (HFW).

United States District Court,
S. D. New York.

July 7, 1975.

The Legal Aid Society of Westchester County, by Martin A. Schwartz, White Plains, N. Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., pro se by A. Seth Greenwald, Asst. Atty. Gen., of counsel.

Brodsky, Linett & Altman, New York City by Alvin Altman, New York City, of counsel, for Flagg Brothers.

Werner & Weiss, New York City by Norman Weiss, New York City, of counsel, for intervenor American Warehouse.

Jaffe, Shaw & Rosenberg, New York City, by Arnold Shaw, New York City, of counsel, for Warehouseman Ass'n and Cold Storage Ass'n.

OPINION

WERKER, District Judge.

Plaintiffs Brooks and Jones are residents of Westchester County whose property was stored by defendant Flagg Brothers, Inc. following their evictions by the Mount Vernon Marshal in 1973.[1] On their own behalf and that of a proposed class of "persons whose property is stored in a warehouse located in the State of New York and whose property has been encumbered by a lien pursuant to New York Uniform Commercial Code § 209 and subject to sale pursuant to New York Uniform Commercial Code § 210 because of warehouse fees allegedly due," [2] they challenge the constitutionality of those two statutes pursuant to 42 U.S.C. § 1983.[3] They allege deprivation of due process guaranteed by the Fourteenth Amendment of the United States Constitution, and seek declaratory and injunctive relief as well as money damages. Their proposed class of defendants includes "all . . . warehousemen doing business in the State of New York and who impose liens and subject goods to sale pursuant to New York Uniform Commercial Code §§ 209, 210 without affording the owner of the goods a prior opportunity to be heard." [4]

Section 7–209 grants a warehouseman a lien on goods stored, and/or transported, for fees allegedly owed by the customer.[5] Section 7–210 gives a warehouseman the authority to enforce such a lien by public or private sale upon proper notification to the customer and

---

1. For the allegations of these named plaintiffs see the decision on Jones' motion to intervene by the Honorable Murray Gurfein, then U.S. D.J., at 63 F.R.D. 409, 411–12 (S.D.N.Y. 1974).

2. Verified Complaint at 2.

3. Section 1983 reads:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   Federal district courts have jurisdiction to hear actions under § 1983 by virtue of 28 U.S.C. § 1343(3).

4. Verified Complaint at 3.

5. Prior to codification by the U.C.C. and its predecessors, such a lien existed at common law. R. Brown, The Law of Personal Property § 119 (2d ed. 1955).

adherence to commercially reasonable sale procedures.[6]

Plaintiffs have moved for class action certification of both a plaintiff and a defendant class, and for summary judgment on the question of the statutes' constitutionality. Defendants have cross-moved to dismiss for failure to state a cause of action and for lack of subject matter jurisdiction on the ground that the challenged conduct does not constitute state action within the meaning of the Fourteenth Amendment, and was not performed "under color of" state law within the meaning of § 1983.[7] Upon careful consideration of the facts in this case and the following analysis of relevant Second Circuit and Supreme Court decisions, the court finds that defendants are indeed correct. Plaintiffs' action is consequently dismissed for lack of jurisdiction.

Plaintiffs have advanced four arguments in support of their assertion that state action is present in the challenged activity. Their first argument is that the Second Circuit's decision in *Hernandez v. European Auto Collision, Inc.*, 487 F.2d 378 (2d Cir. 1973) compels a finding of state action in this case. State action, however, was never discussed in that opinion. In *Hernandez* plaintiff challenged the garageman's lien provisions of the New York Lien Law which allow a garageman to detain an automobile until alleged storage and repair charges are paid, and to foreclose his lien by selling the auto upon proper notification to the bailor.[8] The district court judge dismissed the complaint, noting:

"[E]ven assuming that the defendants are acting under color of state law, the court cannot find that the plaintiffs' constitutional right to due process of law has been deprived by the operation of the challenged provisions of the lien law. Consequently, . . ., the court need not go further and formally pass upon the second requirement—the presence of state action."

346 F.Supp. 313, 317 (E.D.N.Y.1972).[9] On appeal the Second Circuit upheld the dismissal as to the detention provisions of the New York Lien Law because it found that having voluntarily delivered his car to the defendant garageman, and having never requested its return or tendered reasonable storage charges, the plaintiff had no standing to challenge the lien. 487 F.2d at 380. As to the sale provisions of the statute, however, the court noted that if, upon remand, the district judge were to find plaintiff's version of the facts as alleged,

"then we would conclude that plaintiff has, under the doctrines enunciated in *Fuentes v. Shevin*, 407 U.S. 67 [92 S. Ct. 1983, 32 L.Ed. 556] (1972), *Bell v. Burson*, 402 U.S. 535 [91 S.Ct. 1586, 29 L.Ed.2d 90] (1971), and *Sniadach v. Family Finance Corp.*, 395 U.S. 337, [89 S.Ct. 1820, 23 L.Ed.2d 349], a tenable contention that Section 204 of the New York Lien Law as applied here was repugnant to the due process clause of the Fourteenth Amendment . . . ."

*Id.* at 382–83. Neither the court's opinion nor the concurring opinion [10] in *Her-*

6. Such a right of enforcement did not exist in New York at common law, although it has existed in statutory form since 1879. See note 17, *infra*.

7. The "state action" and "action under color of state law" concepts have been found to be functionally equivalent. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Hereinafter they shall be jointly referred to as "state action."

8. The statutes challenged in *Hernandez* are substantially similar to those in question here. *Compare*, New York Lien Law §§ 184, 201,

202 and 204 with New York U.C.C. §§ 7–209, and 210.

9. In a footnote, however, Judge Costantino noted that the presence of state action "would seem to be quite manifest." "Though he is a private individual, the lienor through the public auctioneer it has retained, is performing a traditionally public function pursuant to a right accorded it by a state statute." 346 F.Supp. 313 at 317.

10. Judges Timbers and Lumbard, in a concurring opinion, went further than Judge Wyzanski in the court's opinion, stating that they

*nandez* mentioned or discussed the issue of state action.

█ Plaintiffs argue that a "finding" of state action is implicit in both *Hernandez* opinions. However, because District Judge Costantino had merely assumed the presence of state action in order to consider and dismiss the Hernandez constitutional claim on its merits, the state action issue was not properly before the Court of Appeals; the sole issue on appeal was whether, assuming state action, plaintiff had stated a claim. Furthermore, even if a finding of state action were implicit in the Second Circuit's decision, this court would not be bound by such a *sub silentio* ruling. *United States v. L. A. Tucker Truck Lines*, 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952). This court therefore concludes that the Second Circuit's decision in *Hernandez* is not dispositive of the state action issue in this case.

█ Plaintiffs, in their remaining argument, would have the court find state action because:

—the warehouseman who enforces his own lien pursuant to § 7–210 is performing what has traditionally been a public function;

—the state imposes extensive regulation on the warehousing industry, including regulation of the challenged activity; and

—section 7–210 confers on warehousemen rights in excess of those at common law.

The question of whether state action exists usually arises with respect to private conduct upon an allegation that the conduct is "so entwined with governmental policies or so impregnated with a governmental character as to become subject to the . . . limitations placed upon state action." *Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966). However, as the Supreme Court noted in *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972). "while the principle is easily stated, the question of whether particular discriminatory conduct is private, on the one hand, or amounts to 'state action,' on the other hand, frequently admits of no easy answer." The answers, particularly in recent months, have varied from circuit to circuit, and even within the Second Circuit have produced division and disagreement among panels.[11]

In *Jackson v. Statler Foundation*, 496 F.2d 623 (2d Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975), Judge Smith enumerated five factors culled from a review of state action case law which the court found to be "particularly important to a determination of 'state action' ": [12]

would direct the district court to declare the sale provisions unconstitutional as applied if plaintiff were to prove his allegations.

11. In *Tucker v. Maher*, 497 F.2d 1309 (2d Cir. 1974) Judge Mulligan noted:

Constitutional law, particularly in this difficult and confusing area of state action and due process, is hardly predictable with any degree of certainty. The very recent history of such constitutional litigation in this circuit should convincingly indicate that the role of the prophet is precarious at best.

In a footnote he then added:

In *Shirley v. State Nat'l Bank*, 493 F.2d 739 (2d Cir. 1974), and *Bond v. Dentzer*, 494 F.2d 302 (2d Cir. 1974), after both pan-

els had split 2–1 over state action issues, rehearings en banc were denied . . . by votes of 5–3. In *Jackson v. Statler Foundation*, 496 F.2d 623 (2d Cir. 1974), again a state action case, a rehearing en banc was also denied by a failure of a majority of the active judges to vote in favor of such reconsideration; the vote was 4–4, 496 F.2d at 636.

Id. at 1315.

12. Although the *Jackson v. Statler Foundation* factors were enumerated in the context of an action against charitable foundations for alleged racial discrimination, and the courts have traditionally used a lesser state action standard where race is concerned (see pages 1064, 1065, *infra*), they are helpful in delimit-

(1) the degree to which the 'private' organization is dependent on governmental aid; (2) the extent and intrusiveness of the governmental regulatory scheme; (3) whether that scheme connotes government approval of the activity or whether the assistance is merely provided to all without such connotation; (4) the extent to which the organization serves a public function or acts as a surrogate for the state; (5) whether the organization has legitimate claims to recognition as a 'private' organization in associational or other constitutional terms.

Each of these factors is material; *no one factor is conclusive.*

\* \* \* \* \* \*

Moreover, even if one of these factors is absent, a finding of 'state action' may still be appropriate.

*Id.* at 629–34 (emphasis added). Plaintiffs' second argument for state action, that in enforcing his own lien a warehouseman is performing a public function, finds support in Judge Smith's list above. Their rationale is that at common law a warehouseman could enforce his lien only by obtaining a court judgment and having the sheriff execute on it; thus, by allowing a warehouseman to enforce his lien without resort to the courts and the sheriff, § 7–210 enables him to perform an "inherently" public function. Plaintiffs rely for this theory upon *Blye v. Globe-Wernicke Realty Co.,* 33 N.Y.2d 15, 20, 347 N.Y.S.2d 170, 175, 300 N.E.2d 710, 715 (1973) in which the New York Court of Appeals found that an innkeeper's execution of his own lien amounts to the exercise of a public function: "[T]he execution of a lien, be it a conventional security interest, (cite), a writ of attachment (cite), or a judgment lien (cite), traditionally has been the function of the Sheriff."

The liens referred to by the Blye court, however, all involve satisfaction of a debt having no particular relation to the goods executed upon. While such liens historically belong to the sheriff for execution, execution on goods lawfully in a warehouseman's possession, to satisfy charges *arising out of such possession,* is not traditionally a function of the sheriff; traditionally the sheriff was called upon for execution on goods only after the warehouseman had obtained a judgment lien.[13] *Melara v. Kennedy,* 74 Civ. 1535, N.D.Cal., August 21, 1974. *Accord,* Collier, Procedural Due Process —Post Fuentes Constitutionality of Garageman's Liens, 54 B.U.L.Rev. 542, 554 (1974). This distinction mandates rejection of the public function theory.[14] *Cf. James v. Pinnix,* 495 F.2d 206, 208 (5th Cir. 1974); *Melara v. Kennedy, supra.* In *Melara,* a case substantially identical to the one at hand, the court held that enforcement of a lien pursuant to § 7210 of the California Uniform Commercial Code was not performance of a state or public function, and did not constitute state action. *See also Parks v. Mr. Ford,* 386 F.Supp. 1251, E.D.Pa., 1974. (Pennsylvania's repairman's lien statutes do not so infuse private acts of detention and sale with state involvement as to render them state action).

Plaintiffs' third argument in support of state action relies upon the public function theory and must be re-

ing the outer boundaries of state action prerequisites. The court in *Statler Foundation* found that if the defendant institutions were substantially dependent upon their tax-exempt status, if the government's regulatory scheme was both detailed and intrusive, if the scheme carried connotations of government approval, if the institutions did not have a substantial constitutional claim to be left alone, and if they served some public function, *then* the district court on remand could find state action.

13. Ever since its statutory creation in 1879 (L.1879 c. 336), the warehouseman's lien has traditionally been enforced by warehousemen themselves.

14. Even if this court were to conclude, however, that enforcement of a lien pursuant to § 7–210 constitutes execution of a public function, this conclusion would not lead inexorably to a finding of state action. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Powe v. Miles,* 407 F.2d 73, 80 (2d Cir. 1968).

jected with it. They suggest that because "warehouses and warehousemen are affected with a public interest," state regulation of the industry permeates its nominally private acts with state action. This line of reasoning was effectively foreclosed by the Supreme Court in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed. 2d 477 (1974). In that case petitioner challenged the constitutionality of the defendant's authority, under a tariff filed with the State Public Utilities Commission, to cut off her electric power without meeting the due process standards enumerated in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972). Justice Rehnquist, writing for the Court, stated:

> Perhaps in recognition of the fact that the supplying of utility service is not traditionally the exclusive prerogative of the State, petitioner invites the expansion of the doctrine of this limited line of cases into a broad principle that all businesses 'affected with the public interest' are state actions in all their actions.
>
> We decline the invitation for reasons stated long ago in *Nebbia v. New York*, 291 U.S. 502 [54 S.Ct. 505, 78 L.Ed. 940] (1934), . . . :
>> "It is clear that there is no closed case or category of businesses affected with a public interest . . . . The phrase 'affected with a public interest' can, in the nature of things, mean no more than that an industry, for adequate reason, is subject to control for the public good. . . . In several of the decisions of this Court wherein the expressions 'affected with a public interest' and 'clothed with a public use' have been put forward as the criteria . . . it has been admitted that they are not susceptible of definition and form an unsatisfactory test." *Id,* at 536 [54 S.Ct. 505].

*Id.* at 353, 95 S.Ct. at 455.

■ Plaintiffs seem to have anticipated such foreclosure, for they suggest in the alternative that even if the challenged activity is essentially private, state regulation of the industry is so directly and significantly involved therein that the state must be viewed as a joint participant. Under this rubric which tracks factor (2) in Judge Smith's list above, the state's "involvement" is its regulation of the warehouseman's lien sale and its failure to include in that pervasive regulation a requirement of *Fuentes* due process standards. This in essence is the theory first used by the Supreme Court in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 (1961).[15] *Burton,* however, is distinguishable in two important ways. First, in the instant case the symbiotic relationship between the state and the private defendant present in *Burton* is missing. Secondly, *Burton* was a case involving racial discrimination, and "racial discrimination is so peculiarly offensive and . . . so much the prime target of the Fourteenth Amendment that a lesser degree of involvement may constitute 'state action' with respect to it than would be required in other contexts." *Coleman v. Wagner College*, 429 F.2d 1120, 1127 (2d

---

15. In *Jackson v. Metropolitan Edison Co., supra,* the Supreme Court described the Burton case as follows:

> . . . where a private lessee who practiced racial discrimination leased space for a restaurant from a state parking authority in a publicly owned building, the Court held that the State had so far insinuated itself into a position of interdependence with the restaurant that it was a joint participant in the enterprise. *Id.* at 725 [81 S.Ct. 856]. We cautioned, however, that 'while a multitude of relationships might appear to some to fall within the Amendment's embrace,' differences in circumstances beget differences in law, limiting the actual holding to lessees of public property.

419 U.S. at 357–58, 95 S.Ct. at 457.

Cir. 1970).[16]  *See also Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873 (5th Cir. 1975); *Adams v. So. Cal. First National Bank*, 492 F.2d 324, 333 (9th Cir. 1973), *cert. denied*, 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974). Thus resolution of the state action issue in this, a non-racial case, is not controlled by the standards evolved in cases of racial discrimination.

■ Plaintiff's last argument, and by all appearances the sturdiest, is that by statutorily conferring on warehousemen a power not possessed at common law, the state has created an impetus for warehouseman lien sales, has encouraged such sales, and has thereby so involved itself in the challenged conduct as to transform it into state action.[17] (See factor (3) of Judge Smith's *Jackson v. Statler Foundation* list, *supra*.) The key to this argument is the alteration of common law, for the Second Circuit in recent decisions has held mere statutory codification of common law rights insufficient state involvement to constitute state action. *Bond v. Dentzer*, 494 F.2d 302 (2d Cir. 1974); *Shirley v. State National Bank*, 493 F.2d 739 (2d Cir. 1974). In *Shirley*, where plaintiff challenged repossession of goods purchased under an installment sales contract, the court stated:

. . . since peaceful repossession existed at common law in Connecticut, the mere codification of that right does not, in our view, constitute state action.

*Id.* at 743. Likewise in *Bond*, the court found that state action was not present in an assignment of wages made pursuant to New York's wage assignment statute because "the statute has not given the assignee anything new." *Id.* at 311. *See also Phillips v. Money*, 503 F. 2d 990 (7th Cir. 1974); *Fletcher v. Rhode Island Hospital Trust National Bank*, 496 F.2d 927 (1st Cir. 1974); *Parks v. Mr. Ford, supra* at 1268; *Boland v. Essex County Bank and Trust Co.*,[18] 361 F.Supp. 917 (D.Mass.1973).

The question remains whether satisfaction of this "common law codification or alteration" test alone constitutes state involvement significant enough to be called state action. Judge Smith in *Jackson v. Statler Foundation, supra,* warned that "no one factor is conclusive." By definition, if the facts here do not meet the state action standards for cases of racial discrimination such as *Statler Foundation*, they do not meet the more exigent prerequisites to state action in non-racial cases. The Fifth and Ninth circuits, in the context of challenges to self-help repossession stat-

16. Our circuit has long recognized a double "state action" standard, a less onerous test for cases involving racial discrimination, and a more rigorous standard for other claims. *See United States v. Wiseman*, 445 F.2d 792, 795 at n. 3 (2d Cir. 1971).

17. The statutory right to enforce the warehouseman's lien, first enacted in 1879, was reenacted as § 118 of the New York General Business Law in 1907. L.1907, c. 732 § 33, as amended L.1949, c. 588. In 1962 the state legislature again reenacted it, this time as part of the U.C.C., effective since 1964. The state courts have traditionally considered these statutory provisions to be in derogation of common law. *See, e. g.: Maritime World Corp. v. Grefe Steel Warehouse Corp.*, 154 N.Y.S.2d 684 (S.Ct.N.Y.Cnty.1956); *Hackett v. Nelson Express & Storage Co.*, 162 Misc. 444, 294 N.Y.S. 905 (1937). To the extent, however, that contractual provisions between warehousemen and customers allowing for sale in case of default have been en-

forced by the courts, sale provisions of contractual origin can be said to be part of the state's common law. *Cf.* note 18, *infra*. A majority of warehouseman contracts in New York apparently contain such provisions.

18. In *Boland*, the court examined the constitutional validity of the Massachusetts self-help repossession statute. It found that at common law repossession was allowed *only if provided* for by contract, whereas the statute in question allowed repossession *unless* it was *prohibited* by contract. In dicta the court asserted that the same differences had existed in *Shirley v. State National Bank, supra*, between the common and statutory law of Connecticut, adding: " . . . there is no indication in the [Second Circuit] court's ruling in *Shirley v. State National Bank* that the parties undertook to demonstrate to the court the changes in the law of Connecticut brought about by its enactment of the U.C.C." *Id* at 921. The *Boland* court found that state action existed.

utes, have both found the common law test, alone, to be insufficient. In *Adams v. So. Cal. First National Bank, supra,* the Ninth Circuit stated:

[W]e do not consider it conclusive that section 9503 of the California Commercial Code confirmed what the law of California had theretofore been, *i. e.,* that a secured party upon default had a right to take possession of the collateral. This is not the final answer to the touchstone of state action. Were such a test the only one, the California statutes adopting the common law of England would cast the shadow of state action over all activity and pose an argument that could blanket all individual wrongs under section 1983.

492 F.2d at 330. The Fifth Circuit in *James v. Pinnix, supra,* noted:

. . . the fact is that Mississippi cases did not sanction self-help repossession except when provided for in the parties' contract, whereas § 9–503 allows it except when the contract is silent on the point. Thus the creditor's arguments that § 9–503 merely carried forward the former Mississippi practice and that the contract is the sole source of summary repossession power, lose some force.

495 F.2d at 209. The court then went on to conclude, however, "No bright lines can be drawn in this area, and we draw none. Some state involvement . . . may be present here, but it is simply not enough, given the nonracial nature of the case, to constitute state action."

■ Given the Second Circuit's discussions in *Shirley* and *Bond,* as well as relevant decisions from other courts, it seems clear to this court that with respect to those members of plaintiffs' "class" whose contracts contained a sale-in-case-of-default provision, there is no state action. See note 17 *supra.* As the Ninth Circuit noted in *Adams,* "the State cannot be held responsible for creating conditions that result in standard-

ized contracts in the credit industry which typically provide for self-help repossession without notice or an opportunity for a hearing prior to the seizure of property." 492 F.2d at 333. See Note —State Action: Theories for Applying Constitutional Restrictions to Private Activity, 74 Col. L. Rev. 656 at 665 (1974). Indeed, one case which has dealt specifically with § 7–210 and a contractual provision for sale has so ruled. *Smith v. Bekins Moving and Storage Co.,* 384 F.Supp. 1261 (E.D.Pa. 1974). Furthermore, here as in *Shirley* and *Bond,* the codification and alteration of common law also impose certain procedural restraints on it, to the benefit of warehouse customers, *i. e.,* requirements as to fair notice, reasonable sale, etc., and thus, as in those cases, represent ameliatory rather than regressive action. "Private action does not become state action simply because government regulation has not gone so far as a plaintiff would like." *Jackson v. Statler Foundation, supra* at 639.

Likewise, with respect to those in plaintiffs' "class" who are subject to no contractual provision of sale, the court also fails to find sufficient state involvement to constitute state action. It is true that for this group of warehouse customers the defendants' power of sale comes only from § 7–210. However, in its decision in *Jackson v. Metropolitan Edison Co., supra,* the Supreme Court stated: "Approval by a state utility commission . . . ., where the Commission has not put its own weight on the side of the proposed practice by *ordering* it, does not transmute a practice initiated by the utility and approved by the Commission into 'state action.'" *Id.* at 357, 95 S.Ct. at 456 (emphasis added). In this case no less than in Jackson, the state's involvement in the challenged activity is merely permissive. For this reason, and for the reasons detailed above, the court must conclude that plaintiffs have failed to show sufficient state involvement in the enforcement of warehousemen's liens to confer jurisdic-

tion upon a federal district court under 28 U.S.C. § 1343(3), or to state a claim under 42 U.S.C. § 1983.[19]  The action is therefore dismissed.

So ordered.

19. The court notes that a challenge to §§ 7–209 and 7–210 has already been mounted in the state courts.  In *Jones v. Banner Moving and Storage Inc.*, 78 Misc.2d 762, 358 N.Y.S.2d 885 (Kings Cnty 1974), the New York Supreme Court found those statutes to be unconstitutional for essentially the same reasons plaintiffs would present here.  That decision has been argued on appeal to the Appellate Division, 2d Dept., and is now *sub judice.*