**Margaret MAGRO, individually and on behalf of her minor child Antonio Magro, and Anthony Magro, Plaintiffs,**

**v.**

**LENTINI BROS. MOVING AND STORAGE CO., Inc., Defendant.**

**No. 70–C–60.**

United States District Court,
E. D. New York.

Sept. 2, 1971.

Jeffrey G. Stark, MFY Legal Services, Inc., New York City, for plaintiffs.

Marshall G. Kaplan, Brooklyn, N. Y., for defendant.

Louis J. Lefkowitz, Atty. Gen., by A. Seth Greenwald, New York City, for intervenor.

Memorandum of Decision and Order

MISHLER, Chief Judge.

This is an action based on 42 U.S.C. § 1983. The complaint states four claims, only the first of which is a federal claim.[1] Jurisdiction over the federal claim is alleged under 28 U.S.C. § 1331. The court, in a Memorandum of Decision and Order dated June 8, 1970, found subject matter jurisdiction since the claim could not " . . . be characterized as wholly insubstantial." [2]

Plaintiffs moved for summary judgment "declaring New York State Uniform Commercial Code Section 7–210 void as violative of the Fourteenth Amendment. . . . " (Plaintiffs' notice of motion.) The motion papers have reference only to the first claim stated in the complaint which alleges that "New York Commercial Code § 7–210 is violative of the Due Process and Equal Protection provisions of the 14th Amendment to the United States Constitution insofar as it permits public sale of bailed goods without prior judicial hearing." (Complaint, ¶ 15.)[3] However, in plaintiffs' Memorandum in Reply dated April 2, 1971, plaintiffs also urged the court to grant summary judgment on the second claim, that of fraud. The facts relating to the latter, state, claim are in dispute and thus summary judgment is not appropriate. Lemelson v. Ideal Toy Corporation, 408 F.2d 860 (2d Cir. 1969).

The defendant has cross-moved for an order pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure dismissing the complaint or, alternatively, for summary judgment as to all of plaintiffs' claims. Again, summary judgment would be entirely inappropriate on any of the plaintiffs' state claims, either for plaintiffs or defendant, as substantial issues of controverted fact are present in each of them.

While the above motions were pending, the Attorney General of the State of New York moved to intervene pursuant to Rule 24(b) F.R.Civ.P. The motion of the Attorney General is granted and his brief has been considered on the question involving the constitutionality of the statute.[4]

The material facts upon which the first claim rests are not in dispute. On or about May 2, 1969, plaintiffs were about to be evicted from the apartment they occupied in Flushing, New York. They called the defendant, which is in the business of moving and storing furniture and household goods. Plaintiff Anthony Magro signed a contract with the defendant. The plaintiffs claim that the contract was signed in blank and while the said plaintiff was under duress. The court does not deem this controverted issue to be material here.

On May 5, 1969, the furniture and household effects owned by the plaintiffs were moved by the defendant and stored at its warehouse at 272 Herkimer Street, Brooklyn, New York. On or about July 15, 1969, defendant sent plaintiffs, and plaintiffs received, a copy of the contract signed by the plaintiffs wherein the terms for moving and storage were concededly set forth.

On or about August 18, 1969, defendant served plaintiffs with a notice of sale

---

1. The second claim alleges that the defendant fraudulently induced the plaintiff, Anthony Magro, to sign a blank storage contract and charged plaintiffs false and fraudulent rates for services rendered. The third claims asserts that the storage charge of $90.00 per month was unconscionable and that the defendant charged such unconscionable rate despite the fact that it knew or should have known that plaintiffs would be unable to pay. The fourth claim states that the defendant failed to comply with the provisions of the New York Uniform Commercial Code

§ 7–210 and that the sale, purportedly pursuant to that statute, constituted a conversion of the plaintiffs' property.

2. On application of the defendant, this court certified the question of jurisdiction under 28 U.S.C. § 1292(b), but the Court of Appeals declined the appeal.

3. For text of statute, see Appendix A.

4. The Attorney General has requested leave to reargue the question of jurisdictional amount required under 28 U.S.C. § 1331. The court denies such reargument.

advising the plaintiffs that in the event that moving and storage fees totaling $881.50 were not paid, the furniture and household goods stored by plaintiffs would be sold at public auction on September 8, 1969, at 10:30 A.M. at defendant's premises in Brooklyn. Thereafter, in response to a letter dated August 26, 1969, the sale was adjourned to October 1, 1969.[5]

The goods were finally sold at auction after a number of additional adjournments which were had at plaintiffs' request. The sale was conducted on November 3, 1969, without a judicial determination of the validity of the defendant's lien, as permitted by New York Uniform Commercial Code § 7–210.

The crux of plaintiffs' argument on their federal claim is that the statute is unconstitutional because it permits a warehouseman to execute on a statutory lien without a prior determination by the court of the amount of the lien, thereby depriving the owner of the property of the opportunity to litigate the amount of the claim.[6] Though the plaintiffs also allege that the operation of the statute deprives them of equal protection of the laws, that point is not argued.

■ The court does not reach the issue of whether or not a judicial sale conducted by the lienor pursuant to the statute is state action or action "under color of state law,"[7] since the court finds that even assuming such action is a form of state action, plaintiffs' Fourteenth Amendment rights are not violated by the operation of the statute.

Plaintiffs argue that their right to due process of law is violated when their creditor, the warehouseman, can execute on his statutory lien without first initiating some form of judicial proceeding which will determine the validity of the lien and debt. (Plaintiffs' Brief, filed March 30, 1971, at pp. 14–15.) They cite Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); and Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Their argument amounts to a rejection of the notion that where the owner of the goods has the opportunity

5. The letter was signed and sent by one Gerald Mann, Attorney-in-Charge of the Legal Aid Society, N.Y.U. Law Center, and read as follows:
   This is to confirm my conversation with your office wherein I informed you that Mrs. Magro is having difficulties in meeting her storage charges, but anticipated being able to pay a major portion of the bill within the next month. As per our agreement, you will withhold all action on the sale of her belongings until the first of October, 1969.
   Thank you very much for your cooperation.

6. It is to be noted that plaintiffs, in the complaint, do not seek injunctive relief against the operation of the statute. All they wish, with regard to their federal claim, is a declaratory judgment pursuant to 28 U.S.C. § 2201.

7. It is clear that private conduct will not support an action under 42 U.S.C. § 1983. The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). The difficulty in determining when private conduct may be attributable to the state is noted in Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). State action, or action under color of state law, has been readily found in cases dealing with racial discrimination. See, e. g., Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); and see Friendly, J., concurring, in Coleman v. Wagner College, 429 F.2d 1120, 1127 (2d Cir. 1970).
   The last three decades have seen the emergence of another theory of state action, more pertinent to the problem here under discussion. According to this doctrine, private persons, when performing traditionally public functions, become liable under § 1983. See, e. g., Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); Hall v. Garson, 430 F.2d 430 (5th Cir. 1970); Klim v. Jones, 315 F. Supp. 109 (N.D.Cal.1970); United States v. Barr, 295 F.Supp. 889 (S.D.N.Y.1969). Under this approach, state action can be found in defendant's execution on its own lien.

to begin court proceedings himself, the requirements of due process are satisfied.

Plaintiffs cite several cases besides those referred to above which the court finds deserving of discussion. In Coe v. Armour Fertilizer Works, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027 (1915), the Court, in broad language, indicated that the opportunity to be heard satisfied due process demands. In that case, a Florida statute was attacked which permitted the creditor of a corporation to execute on the corporation's stockholders' personal goods without either notice or a hearing where the corporation was effectively without assets. The Court held the statute to be "repugnant to the 'due process of law' provision of the 14th Amendment, which requires at least a hearing, or an opportunity to be heard, in order to warrant the taking of one's property to satisfy his alleged debt or obligation." 237 U.S. at 422–423, 35 S.Ct. at 628. The opinion turned on the failure of the statute to provide for notice to the stockholders that execution, limited to the amount of their unpaid subscriptions of stock, would be had against their property.

The Court, in Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944), upheld a Kentucky statute in which the state took possession of abandoned bank accounts on posted notice of six weeks duration. The Court found no need for a hearing in "every procedure affecting the ownership or disposition of property." The Court indicated that it was enough if notice was given to the person to be deprived and that person had the opportunity to seek relief in the courts.

Plaintiffs rely heavily on Sniadach v. Family Finance Corp., *supra.* In *Snia-*

*dach,* the Wisconsin wage garnishment statute *came under attack.* The statute permitted a creditor to garnish fifty percent of the debtor's wages with neither a hearing nor prior notice of the garnishment. The Court, there, was careful to point out that "[w]e deal here with wages—a specialized type of property presenting distinct problems in our economic system." 395 U.S. at 340, 89 S.Ct. at 1822. The Court's special concern was " . . . that a prejudgment garnishment of the Wisconsin type may as a practical matter drive a wage-earning family to the wall." 395 U.S. at 341, 89 S.Ct. at 1822–1823. In this special situation, the Court found that "it needs no extended argument to conclude that absent notice and a prior hearing [citations omitted] this prejudgment garnishment procedure violates the fundamental principles of due process." 395 U.S. at 342, 89 S.Ct. at 1823.

There are material differences between the Wisconsin statute attacked in *Sniadach* and § 7–210 of the New York Uniform Commercial Code. First, the property here involved has been voluntarily and knowingly delivered to the party seeking to execute on it. Second, the statute in question here specifically provides for notice, and the bailor may enter the courts to obtain redress after receipt of that notice. Third, the deprivation of property which has been voluntarily parted with for long periods of time cannot be held to have the same disastrous effect as those "specialized type[s] of property" referred to by the Court in *Sniadach.*

The Court's decision in *Sniadach* has been interpreted by many lower federal courts in subsequent suits attacking various laws benefiting creditors.[8] A ma-

8. Grouped by the subject matter of the statute involved, these are (a) Replevin: Brunswick Corp. v. J & P, Inc., 424 F.2d 100 (10th Cir. 1970); Laprease v. Raymours Furniture Co., 315 F.Supp. 716 (N.D.N.Y.1970) (Three judge court); Fuentes v. Faircloth, 317 F.Supp. 954 (S.D.Fla.1970) (Three judge court) prob. juris. noted, 401 U.S. 906, 91 S.Ct.

893, 27 L.Ed.2d 804, by Supreme Court Feb. 22, 1971); Wheeler v. Adams Co., 322 F.Supp. 645 (D.Md.1971); (b) Garnishment: Tucker v. Burton, 319 F.Supp. 567 (D.C.D.C.1970) (Three judge court); American Olean Tile Co. v. Zimmerman, 317 F.Supp. 150 (D.Hawaii 1970); Lynch v. Household Finance Co., 318 F.Supp. 1111 (D.Conn.1970) (Three judge court)

jority of the courts in these cases have found the property seized to be not so specialized as to merit the treatment accorded wages in *Sniadach*. Thus, houses in Young v. Ridley, *supra*, apartments in Hutcherson v. Lehtin, *supra*, household goods in Fuentes v. Faircloth, *supra*, and Wheeler v. Adams Co., *supra*, wages of non-residents in Tucker v. Burton, *supra*, and cars in McCormick v. First National Bank, *supra*, have all been held immune, under the factual situations presented, from the very strict due process requirements of *Sniadach*. On the other hand, household and personal property in Laprease v. Raymours, *supra*, Klim v. Jones, *supra*, Santiago v. McElroy, *supra*, and Swarb v. Lennox, *supra*, have all been held to come within the rule of *Sniadach*, the respective courts invalidating the state statutes presented to them.

All of the above cases, however, involved a taking of property from the possession, either actual or constructive, of the debtor. The statute under attack here, however, cannot come into play without possession first being surrendered to the warehouseman. The latter has no lien without possession. The distinction argued at length by the intervenor is apt. This distinction is simply that, where possession of the goods in question has been voluntarily surrendered by the debtor, the goods cannot be "specialized," as that classification is restricted to those goods the deprivation of which will drive the debtor "to the wall". This is evidently not the case where the debtor has voluntarily parted with possession for a reasonably long period of time. In the instant case, the plaintiffs placed their goods in storage, and Mr. Magro signed a contract which specifically stated that there was a three month minimum period of storage. This transfer of possession was apparently voluntary. Can any goods, the possession of which is voluntarily parted with for long periods of time, be so necessary that their deprivation must of needs force families "to the wall"? This court does not believe so.

The very nature of the goods being warehoused demands the availability of a summary proceeding which will permit the warehouseman to quickly dispose of claims against his debtors. The charge for his services increases daily, while the value of the goods decreases. If the warehouseman were required to institute an action, it would serve no other purpose in the vast majority of cases than to increase the cost of the services and weaken the warehouseman's security. Keeping all these circumstances and possible legislative justifications in mind, this court cannot say that the procedure defined in § 7–210 denies plaintiffs due process of law.[9]

prob. juris. noted 401 U.S. 935, 91 S.Ct. 962, 28 L.Ed.2d 214, by Supreme Court Mar. 1, 1971) ; (c) Summary Proceedings for Repossession of Real Property: Hutcherson v. Lehtin, 313 F.Supp. 1324 (N.D.Cal.1970) (Three judge court) ; Velasquez v. Thompson, 321 F.Supp. 34 (S. D.N.Y.1970) ; (d) Extra-Judicial Mortgage Foreclosure: Young v. Ridley, 309 F. Supp. 1308 (D.C.D.C.1970) ; (e) Confession of Judgment: Swarb v. Lennox, 314 F.Supp. 1091 (E.D.Pa.1970) (Three judge court), supplementary order, 314 F.Supp. 1112 (prob. juris. noted, 401 U.S. 991, 91 S.Ct. 1220, 28 L.Ed.2d 529, by Supreme Court Mar. 29, 1971) ; (f) Summary Imprisonment for Non-Appearance at Disclosure Proceeding: Desmond v. Hachey, 315 F.Supp. 328 (D.Me.1970) (Three judge court) ; (g) Imposition of Hotelman's Lien: Klim v. Jones, 315 F.Supp.

109 (N.D.Cal.1970) ; Imposition of Landlord's Lien: Hall v. Garson, 430 F.2d 430 (5th Cir. 1970) ; (i) Sale of Goods Distrained for Rent: Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970) (Three judge court) ; (j) Attachment of Real Estate: Black Watch Farms, Inc. v. Dick, 323 F.Supp. 100 (D.Conn.1971) ; (k) Repossession of Goods under Conditional Sales Agreement: McCormick v. First National Bank, 322 F.Supp. 604 (S.D. Fla.1971).

9. A subsidiary question raised by the plaintiffs, but not argued, is the relevance of plaintiffs' alleged indigency. The court assumes that plaintiffs claim that they were financially unable to institute legal action staying the sale, and that therefore their right to equal protection of the laws was violated. The simple answer to such a

The court has not overlooked the question of the justiciability of the controversy. As the plaintiffs have requested only declaratory relief on their federal claim, and their goods had already been sold by the time the present action was filed, a question arises concerning whether or not there is a case or controversy. Declaratory relief will not improve the position of the instant plaintiffs in any way, save by possibly assuring them that were similar circumstances to arise in the future, they would be taken to court before their goods were sold.

In a somewhat similar factual setting, the Supreme Court has held that the Declaratory Judgment Act may not be used to rule upon the constitutionality of state statutes where there is no live grievance. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). In that case, the specific factual grievance upon which the suit had originally been brought was mooted after the initiation of the suit. A decree in plaintiff's favor in that case would have meant nothing more than that he would not suffer similar treatment in the future in a different case.

It is necessary only to note the above question, however, as the court's decision in the instant matter obviates a more detailed investigation.

The defendant's motion for a judgment dismissing the claim is granted. The other state claims which were retained are dismissed. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

The Clerk is directed to enter judgment in favor of the defendant and against the plaintiffs dismissing the complaint, and it is

So ordered.

### APPENDIX A.

Uniform Commercial Code § 7–210—*Enforcement of Warehouseman's Lien*

(1) Except as provided in subsection (2), a warehouseman's lien may be enforced by public or private sale of the goods in bloc or in parcels, at any time or place and on any terms which are commercially reasonable, after notifying all persons known to claim an interest in the goods. Such notification must include a statement of the amount due, the nature of the proposed sale and the time and place of any public sale. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the warehouseman is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the warehouseman either sells the goods in the usual manner in any recognized market therefor, or if he sells at the price current in such market at the time of his sale, or if he has otherwise sold in conformity with commercially reasonable practices among dealers in the type of goods sold, he has sold in a commercially reasonable manner. A sale of more goods than apparently necessary to be offered to insure satisfaction of the obligation is not commercially reasonable except in cases covered by the preceding sentence.

(2) A warehouseman's lien on goods other than goods stored by a merchant in the course of his business may be enforced only as follows:

(a) All persons known to claim an interest in the goods must be notified.

(b) The notification must be delivered in person or sent by registered or certified letter to the last known address of any person to be notified.

(c) The notification must include an itemized statement of the claim, a description of the goods subject to the lien, a demand for payment within a specified time not less than ten days after receipt of the notification, and a conspicuous statement that unless the claim is paid within that time the goods

contention is that access to the courts cannot be conditioned upon ability to pay for

costs. Boddie v. Connectecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

will be advertised for sale and sold by auction at a specified time and place.

(d) The sale must conform to the terms of the notification.

(e) The sale must be held at the nearest suitable place to that where the goods are held or stored.

(f) After the expiration of the time given in the notification, an advertisement of the sale must be published once a week for two weeks consecutively in a newspaper of general circulation where the sale is to be held. The advertisement must include a description of the goods, the name of the person on whose account they are being held, and the time and place of the sale. The sale must take place at least fifteen days after the first publication. If there is no newspaper of general circulation, where the sale is to be held, the advertisement must be posted at least ten days before the sale in not less than six conspicuous places in the neighborhood of the proposed sale.

(3) Before any sale pursuant to this section any person claiming a right in the goods may pay the amount necessary to satisfy the lien and the reasonable expenses incurred under this section. In that event the goods must not be sold, but must be retained by the warehouseman subject to the terms of the receipt and this Article.

(4) The warehouseman may bid at any public sale pursuant to this section.

(5) A purchaser in good faith of goods sold to enforce a warehouseman's lien takes the goods free of any rights of persons against whom the lien was valid, despite noncompliance by the warehouseman with the requirements of this section.

(6) The warehouseman may satisfy his lien from the proceeds of any sale pursuant to this section but must hold the balance, if any, for delivery on demand to any person to whom he would have been bound to deliver the goods.

(7) The rights provided by this section shall be in addition to all other rights allowed by law to a creditor against his debtor.

(8) Where a lien is on goods stored by a merchant in the course of his business the lien may be enforced in accordance with either subsection (1) or (2).

(9) The warehouseman is liable for damages caused by failure to comply with the requirements for sale under this section and in case of willful violation is liable for conversion. L.1962, c. 553; amended L.1963, c. 1003, § 15, eff. Sept. 27, 1964.