**Shirley Herriott BROOKS, Individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**FLAGG BROTHERS, INC., and Henry Flagg, Individually and as President of Flagg Brothers, Inc., Defendants.**

**No. 73 Civ. 4050 MIG.**

United States District Court,
S. D. New York.

June 25, 1974.

---

The Legal Aid Society of Westchester County, by Martin A. Schwartz, Lawrence S. Kahn and Gene F. Reibman, White Plains, N. Y., of counsel, Louis B. York, Manhattan Legal Services Corp., New York City, for plaintiffs.

Brodsky, Linett & Altman, New York City, for defendants, by Alvin Altman and Michael J. Barnas, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of N. Y., pro se, proposed intervenor, by A. Seth Greenwald, Asst. Atty. Gen., of counsel.

Werner & Weiss, New York City, for proposed intervenors, American Warehousemen's Ass'n and International Ass'n of Refrigerated Warehouses, Inc., by Martin Weiss, New York City, of counsel.

Jaffe, Shaw & Rosenberg, New York City for proposed intervenors, Warehousemen's Ass'n of Port of N. Y. and the Cold Storage Warehousemen's Ass'n of Port of N. Y., by Arnold H. Shaw, New York City, of counsel.

GURFEIN, District Judge:

This is an action challenging the constitutionality of New York's warehousemen's lien laws, N.Y.U.C.C. §§ 7–209, 7–210, which grant a warehouseman a lien and the right to sell stored goods for warehouseman's fees allegedly due without granting the owner of the stored goods an opportunity for a hear-

ing prior to the imposition of the lien and sale. The plaintiff Brooks individually and on behalf of all others similarly situated seeks declaratory and injunctive relief and money damages. Jurisdiction is alleged under 42 U.S.C. §§ 1983, 1985, 28 U.S.C. § 1343(3), (4) and 28 U.S.C. §§ 2201, 2202.

There are currently four pending motions to intervene pursuant to Fed.R. Civ.P. 24. (1) Gloria Jones has moved to intervene as a plaintiff individually and on behalf of all others similarly situated pursuant to Fed.R.Civ.P. 24(b) (2); (2) the American Warehousemen's Association and the International Association of Refrigerated Warehouses, Inc. have moved to intervene as party defendants; (3) the Warehousemen's Association of the Port of New York, Inc. and the Cold Storage Warehousemen's Association of the Port of New York have moved to intervene as party defendants; and (4) the Attorney General of the State of New York has moved to intervene as a party defendant. Only the Attorney General's motion is unopposed. Flagg opposes the intervention of the proposed plaintiff.

## I

### THE "BROOKS COMPLAINT"

Shirley Brooks ("Brooks") alleges that she represents "a class of persons whose property is stored in a warehouse located in the State of New York and whose property has been encumbered by a lien pursuant to New York Uniform Commercial Code § 7–209 and subject to sale pursuant to New York Uniform Commercial Code § 7–210 because of warehouse fees allegedly due, without opportunity for a prior hearing." [1] She further alleges that the action is properly a class action under Fed.R.Civ.P. 23. Brooks also claims that defendant Flagg Brothers, Inc. ("Flagg Brothers") is a representative of a class of defendants, "all of whom are warehousemen doing business in the State of New York and who impose liens and subject goods to sale pursuant to New York Uniform Commercial Code §§ 209–210 without affording the owner of the goods a prior opportunity to be heard." [2]

Brooks is a New York citizen, residing in White Plains with her three minor children. Her husband is deceased. Her weekly "take home" salary is approximately $100, her sole source of income.

Flagg Brothers is a New York corporation engaged in the business of moving and storage. Flagg Brothers maintains an office at 247 South Fifth Avenue, Mount Vernon, New York. Defendant Henry Flagg ("Flagg") is President of Flagg Brothers; he is sued individually and in his official capacity. Defendant James A. Leviston ("Marshal") is the City Marshal of Mount Vernon and is also sued individually and in his official capacity.

In her complaint, Brooks alleges the following facts. In the spring of 1973, an order of eviction was entered by the City Court of Mount Vernon against the plaintiff who was then residing at 33 North 3rd Avenue, Mount Vernon, N. Y. The defendant Marshal appeared on June 13, 1973 to remove the plaintiff and her possessions from her apartment. Brooks told the Marshal that she wanted to call someone to store her furniture. The Marshal responded that she could not get anyone to store her furniture and that the man with him, defendant Flagg, would store her furniture. Flagg informed Brooks that she would have to pay $65 per month for moving and storage. Believing she had no choice, Brooks agreed. After the goods were loaded onto one of Flagg Brothers' trucks, one of the moving men told Brooks that she would have to pay $178 ($75 per month for storage, $75 for barrelling and platforming and $28 for fumigating).

1. ¶ 5.

2. ¶ 7.

After her eviction, Brooks and her children moved into her cousin's apartment at 120 North Kensco Avenue, White Plains, New York. On June 15, 1973 the plaintiff called Flagg Brothers and was informed that she owed an additional $156. When she went to Flagg Brothers' office, she was told that the $178 was considered only a deposit. She was also advised that the storage charges were on a "per month" basis so that an additional $75 would be due on July 1, rather than on July 13 as she had thought.

Subsequent communications between Brooks and Flagg Brothers include: Flagg's secretary advising Brooks that the plaintiff could only obtain her possessions if she paid $484 in cash; a letter from Flagg Brothers in the form of a "Final Notice" that unless payment was made Flagg Brothers would advertise her goods for public auction. Prior to August, 1973, Brooks had been unable to remove her goods because of insufficient space in her cousin's apartment.

It appears that the goods have now been returned to plaintiff Brooks in their entirety. She has no claim for injunctive relief but only a claim for damages and declaratory relief.

## II

## MOTIONS TO INTERVENE

(1) *Jones' Motion to Intervene as Plaintiff*

█ Because Brooks' case for injunctive relief has been dissipated, the same lawyers now seek intervention on behalf of Gloria Jones. In her proposed intervenor's complaint, Jones virtually tracks the jurisdictional [3] and class action allegations that appear in Brooks' complaint.

Jones is a New York citizen, residing alone at 670 Lincoln Avenue, Mount Vernon, New York. She has a weekly income of $87.00 after taxes. The defendants are Flagg and Flagg Brothers. She does not name the Marshal.

Jones alleges that on December 26, 1973 the Marshal came to remove her and her possessions pursuant to an order of eviction entered against Jones by the City Court of Mount Vernon. The Marshal repeated what he had told Brooks that Jones could not get anyone to store her furniture and other possessions and that the man with him, an employee of Flagg Brothers, was the man who would store her goods.

Unlike Brooks, Jones did not agree to Flagg Brothers storing her goods. Nor was she advised of the storing rate. Nonetheless, Flagg Brothers took the goods to its storage warehouse.

After her eviction, Jones moved to her current address. She spoke to Flagg Brothers in March, 1974 and was told she would have to pay $600 to obtain her goods. She was also told that had she not contacted Flagg Brothers at that time the goods would have been sold immediately.

Thereafter, Jones complained of the high price, noting that she had not contracted to pay for the storage. The defendants told her that the bill was only $500 and that if she did not pay the entire sum by April 12, 1974 the goods would be sold. Jones cannot afford to pay.[4]

Jones urges that the imposition of a warehousemen's lien and the threatened sale (U.C.C. §§ 7–209, 7–210) without a prior hearing are actions under color of state law which violate plaintiff's due process rights under the Fourteenth Amendment.

---

3. Jones limits herself to 42 U.S.C. § 1983, 28 U.S.C. § 1343(3) and 28 U.S.C. §§ 2201, 2202. She omits as a basis for jurisdiction 42 U.S.C. § 1985, 28 U.S.C. § 1343(1), (4).

4. ¶ 17.

Like the Brooks' complaint, the Jones' complaint seeks declaratory and injunctive relief and damages.

In an answering affidavit, Flagg's attorney avers that defendants have advised plaintiff's counsel that the defendants have no intention of selling the goods and if they do decide to sell them, plaintiff's counsel will be notified "well in advance of any sale." [5] Plaintiff's counsel has sworn in a reply affidavit that because of these assurances he has not sought a temporary restraining order on behalf of Jones.

Jones' motion is for permissive intervention (Fed.R.Civ.P. 24(b)(2)) and as part of her representation of a class (Rule 23).

No class determination under Rule 23 has yet been considered by the Court.

Rule 24(b)(2) provides in part: "Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Having eliminated Brooks as a plaintiff for injunctive relief, the defendants now seek to eliminate the proposed intervenor Jones by telling her that they have no intention of selling her goods, and that she would, in any event, be notified well in advance of the sale. If the defendants made the same promise each time a plaintiff challenged them, or even gave the goods back each time, they would have a continuing argument that there is no justiciable controversy and that the particular plaintiff had no standing.

The situation is analogous to the problem presented in Southern Pacific Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), where the Court held that it had jurisdiction to determine whether an order of the I.C.C. should be enjoined, even though the order had by then expired. "The questions involved in the orders of the Interstate Commerce Commission are usually continuing (as are manifestly those in the case at bar) and their consideration ought not be, as they might be, defeated, by short term orders, capable of repetition, yet evading review." (219 U.S. at 515, 31 S.Ct. at 283.)

In the case at bar, the practices of the defendants under a continuing statute cannot be kept from judicial scrutiny by quick settlements or apologies. The threat alleged by Mrs. Jones that her furniture would be sold if she did not pay makes this a case or controversy, certainly for purposes of a declaratory judgment. Her property is concededly in the defendants' possession and the threat has been alleged. The defendants' position remains that storage fees are due and that Jones is responsible for them. Even though the threat of sale did not succeed in "coercing" a "voluntary" payment by Jones, defendants still maintain that they do have recourse to § 7–210 procedures. The fact that they agreed not to invoke § 7–210 during this suit does not affect Jones' action in terms of its ripeness any more than had Jones sought and won a restraining order. Since the threat of sale would have been sufficient for ripeness for purposes of a restraining order, it is also sufficient here. See Hart & Wechsler, The Federal Courts and The Federal System 139 n. 5 (1953).

Similarly, the *status quo* accord does not diminish Jones' interest for purposes of standing. She has alleged " 'such a personal stake in the outcome of the controversy as to assure that the concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions. . . .'

5. Altman Affd. ¶ 5.

Baker v. Carr, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L.Ed.2d 663 (1962)." Jenkins v. McKeithen, 395 U.S. 411, 423, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969).

While it is true that the factual patterns in Jones' complaint differ from Brooks', the legal issue remains the same, whether the decision of Magro v. Lentini Bros. Moving & Storage Co., 338 F.Supp. 464 (E.D.N.Y.1971), aff'd per curiam on opinion below, 460 F.2d 1064 (2 Cir.), cert. denied, 406 U.S. 961, 92 S.Ct. 2074, 32 L.Ed.2d 349 (1972), upholding the constitutionality of § 7–210 has continuing vitality in light of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and Hernandez v. European Auto Collision, Inc., 487 F.2d 378 (2 Cir. 1973). Accordingly, permissive intervention is appropriate. Boone v. Wyman, 295 F.Supp. 1143 (S.D.N.Y.1969) (Mansfield, J.).

(2) *Motions to Intervene as Defendants*

■ (a) The American Warehousemen's Association ("AWA") is a nonprofit organization incorporated in Illinois, with its principal place of business in Illinois. It is the national trade association for the *public merchandise* warehousing industry, having 478 members who operate in every state (including New York) except four. Its members' warehouses account for approximately 1,801,218,000 cubic feet of warehouse space—about 75% of all public merchandise warehouse space in the United States.

(b) The International Association of Refrigerated Warehouses ("IARW") is a non-profit Delaware corporation with its principal offices in Washington, D.C. It is the national trade association for the *public refrigerated* warehousing industry, having 218 member companies in the United States who operate 432 public refrigerated warehouses in every state (including New York) except four. The membership accounts for 567,000,000 cu-

bic feet of public refrigerated warehouse space which represents over 75% of the total public refrigerated warehouse space in the United States.

Both the AWA and IARW argue that since the U.C.C. (including the provisions of §§ 7–209 and 7–210) has been adopted in 49 states, a holding that §§ 7–209 and 7–210 are unconstitutional would adversely affect their membership. While they claim there are common issues of law, they assert intervention is appropriate because their interests may differ from Flagg Brothers'. They note that Flagg Brothers deals· with the public—storing furniture— while they deal with commodities in commerce. They contend that if the statute is held to be unconstitutional it would affect them as well, without the Court having been acquainted with the problems of their industry. Both seek intervention pursuant to Fed.R.Civ.P. 24(a) and 24(b).

(c) The Warehousemen's Association of the Port of New York ("WAPNY") is a trade association incorporated in New York consisting of many *public warehousemen* doing business in the City of New York and metropolitan New Jersey area. The members store, handle and distribute merchandise, commodities and materials of every character and description.

(d) The Cold Storage Warehousemen's Association of the Port of New York ("CSWAPNY") is an unincorporated trade association, with a membership in the same geographical vicinity as WAPNY. Their activities consist primarily of the storage, handling and distribution of *perishable foods* and other· commodities that require *refrigerated* facilities for their storage.

In response to the motions of all four proposed intervening defendants, the plaintiff urges that their proper role should be that of *amicus curiae,* not party defendants.

I disagree. As was not the case in Sierra Club v. Morton, 405 U.S. 727, 92

S.Ct. 1361, 31 L.Ed.2d 636 (1972), the proposed intervenors have alleged that its members themselves would be affected by a declaration that §§ 7–209 and 7–210 are unconstitutional (cf. 405 U.S. at 735). It is plain that at least the New York members of the intervenors have substantial interest in upholding the constitutionality of the provisions here attacked, with non-New York members in states which have adopted the U.C.C. also interested.

Under Rule 24(b) one may be permitted to intervene in an action "(2) when an applicant's claim or defense and the main action have a question of law or fact in common."

It might have been thought, as is indeed suggested by the objecting plaintiff, that where merely a question of law is involved the intervenor should be remitted to the status of an *amicus curiae*. That makes some sense because the judgment here would not be res judicata on any claim or defense of the proposed intervening defendants.

■ The test of permissive intervention is broader however. First, the rule reads in the disjunctive—question of law *or* fact—so that intervention may be permitted where the question of *law*, though not of fact, is common. Second, the words "claim or defense" have not been read in a technical sense, but permissive intervention has been upheld even where in Professor Moore's phrase "the existence of any nominate 'claim' or 'defense' is difficult to find." Moore, Federal Practice, ¶ 24.10[2], 24–354.

A ground for intervention is "economic interest." Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 135, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) (intervention by California allowed because its interests in a competitive system of natural gas distribution);[6] Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694 (1967); Textile Workers Union of America v. Allendale Co., 96 U.S.App.D.C. 401, 226 F.2d 765, 769 (1955) ("a real economic stake in the outcome of this litigation"); Champ v. Atkins, 76 U.S.App.D.C. 15, 128 F.2d 601 (1942).

It is, of course, true that in some situations a general economic interest would not be enough. But in this situation where specific segments of an industry would be vitally affected by a declaration that the statute which governs their business conduct is unconstitutional, there is little reason to exclude them from participation. As Judge Leventhal said in Nuesse v. Camp, *supra* at 700: ". . . the 'interest' test is primarily a practical guide to disposing of law suits by involving as many apparently concerned persons as is compatible with efficiency and due process." The tendered answers of the proposed intervenors do not raise complicated questions of fact. On being permitted to intervene, their activity will be controlled by appropriate orders of the Court.

The four motions to intervene as party defendants are granted pursuant to Fed.R.Civ.P. 24(b)(2).

(3) The State Attorney General of the State of New York is permitted to intervene on consent.

Further caption in the action shall include the names of the intervening parties.

It is so ordered.

---

**6.** Though *Cascade* was a Rule 24(a) intervention, the principle should apply to 24(b) intervention as well.