COX BAKERIES OF NORTH DAKOTA, INC., Appellant,

v.

TIMM MOVING & STORAGE, INC., and Allen Olson as Attorney General for the State of North Dakota, Appellees.

No. 76–1722.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1977.

Decided May 12, 1977.

Rehearing Denied June 9, 1977.

Douglas A. Christensen, Pearong & Christensen, Grand Forks, N. D., for appellant.

Gary A. Holum and Robert S. Rau, Bosard, McCutcheon, Kerian, Schmidt & Holum, Ltd., Minot, N. D., for appellees.

Before GIBSON, Chief Judge, CLARK, Associate Justice,* and HEANEY, Circuit Judge.

Mr. Justice CLARK.

Cox Bakeries of North Dakota, Inc., appellant, is a small, closely held family corporation with Dale Cox as its managing officer. From May, 1972 to April, 1973, Cox was unable to work due to serious illness. The lease on Cox's Minot, North Dakota, bakery was expiring in December, 1972, and Cox requested Donald Lauchner, his local manager, to close out the bakery and store the equipment which was valued at $25,000. Lauchner then called Timm Moving and Storage Company, appellee, of Minot, and asked for an estimate on the cost of hauling the equipment to Timm's warehouse in Minot. Lauchner alleges the estimate given was $600.00. There was no contract or agreement between Cox or Lauchner, and Timm, other than the bid. On the basis of this estimate, the equipment was moved and stored at Timm's warehouse.

In April, 1973, Cox received a billing statement for $1,908.50 which included $956.50 hauling, $761.60 accrued storage and a handling charge of $190.40. Another billing statement was received by Cox in early August totalling $2,670.10. Cox called Timm and protested the charges. He mentioned the bid of $600.00 made by Timm for hauling, and claimed that the storage should be from $50 to $60 per month and that no handling charges were involved. Timm refused to discuss the charges. In September, Timm advised Cox that there was $2,670.10 due "against your bakery equipment" and unless paid by September 24, 1973, "we shall be forced to put your goods up for sale by Public Auction on October 20, 1973 * * *". Cox turned this letter over to his attorney, who wrote Timm protesting the charges and suggesting negotiation. On September 23, Timm again demanded payment. Cox's attorney then wrote Timm and advised him that Cox was entitled to a hearing on the validity of the disputed debt before a warehouseman's lien of sale could be made of the property securing the debt. Despite this, Timm sold the Cox equipment at public auction for a total of $3,152.95, which was retained by Timm, except for a payment of about $100 to the auctioneer.

Cox filed this suit which was dismissed by the District Court under the authority of *Nichols v. Tower Grove Bank,* 497 F.2d 404 (8th Cir. 1974). We find *Nichols* inapposite since there a written agreement between the parties specifically authorized the sale

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.), sitting by designation.

and here no written agreement was present. We have been unable to find any case in the Supreme Court involving the specific question raised here,[1] which is: Was the auction sale under North Dakota's statute which deprived Cox of his property without a hearing, violative of the Due Process Clause of the Fourteenth Amendment? We believe that it was and reverse the judgment.

## I

■ First, in a § 1983 action, it must be shown that the sale was made under color of state law. The facts here are quite different from the "self-help" cases cited by Timm where in each instance there was an agreement of the parties authorizing the sale.[2] We agree that there was no state action involved in those cases. However, there is no agreement here. The sale was made under the North Dakota statute, N.D. Cent.Code § 41–07–16, the absence of which would have required Timm to go into court and prove not only his lien claim, but also the amount of the charges. But under § 41–07–16 he was not required to prove either his lien or the amount due under it. In short, the state has delegated the traditional roles of judge, jury and sheriff to Timm without providing for any judicial supervision or other safeguards.

In judging the type of action taken here, reference should be made to my Brother Brennan's concurrence in *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Mr. Justice Brennan stated:

> Thus, when private action conforms with state policy, it becomes a manifestation of that policy and is thereby drawn within the ambit of state action. *Id.* at 203, 90 S.Ct. at 1626.

\* \* \* \* \* \*

> A private person acts "under color of" a state statute or other law when he, like the official, in some way acts consciously pursuant to some law which gives him aid, comfort, or incentive \* \* \*. *Id.* at 212, 90 S.Ct. at 1631.

And in *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), Mr. Justice White, expressing the view of the majority, held that a state constitutional provision which authorized private individuals to discriminate in the sale or lease of their property and repealed all existing state laws banning such discrimination, effectively constituted state action. While none of these decisions squarely control the case we have before us, each does provide an insight into the range of situations in which state action can be found.

Timm relies upon *Melara v. Kennedy,* 541 F.2d 802, 805–06 (9th Cir. 1976) which held that no state action existed on the theory that the warehouseman was not performing a function which was traditionally exercised by the state. As Judge Choy held in *Melara,* California had not traditionally required the intervention of the state through its judiciary in foreclosing warehouseman's liens where the property was in the latter's hands. As he points out, a series of at least four different California statutes, going back to 1872, all included the right of private sale. This is not true here. In North Dakota, prior to the enactment in 1967 of N.D.Cent.Code § 41–07–16, the warehouseman's lien was derived from the common law which required that the lien and the amounts due thereunder be proven in a judicial proceeding. The foreclosure of the lien was conducted by the sheriff under the

---

1. *North Georgia Finishing Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (garnishment); *Mitchell v. W. T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (sequestration); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment).

2. *See Nichols v. Tower Grove Bank,* 497 F.2d 404 (8th Cir. 1974); *Nowlin v. Professional Auto Sales, Inc.,* 496 F.2d 16 (8th Cir.), *cert. denied,* 419 U.S. 1006, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *Bichel Optical Lab, Inc. v. Marquette Nat. Bk. of Mpls.,* 487 F.2d 906 (8th Cir. 1973).

supervision of the court. In *Brooks v. Flagg Brothers, Inc.*, 553 F.2d 764 (2d Cir. 1977) the Second Circuit held that the combination of New York's statutory delegation of governmental power to the warehouseman and the statutory expansion of the warehouseman's common law remedies is sufficient involvement to constitute state action. Accordingly, we find the necessary state action to be present here.

## II

In *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), Mr. Justice Douglas, writing for the majority, struck down Wisconsin's garnishment statute which authorized the clerk of the court to issue the "writ" at the request of the creditor's lawyer, freezing the debtor's wages until the outcome of the trial on the merits. *Id.* at 338–39, 89 S.Ct. 1820. The Court held:

> [T]he wage earner is deprived of his enjoyment of earned wages without any opportunity to be heard, to tender any defense he may have, whether it be fraud or otherwise.

*Id.* at 339, 89 S.Ct. at 1821.

The rationale of this case was aptly expressed by the late Mr. Justice Harlan, in his concurring opinion, when he stated:

> I think that due process is afforded only by the kinds of "notice" and "hearing" which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged *debtor* before he can be deprived of his property * * *. *Id.* at 343, 89 S.Ct. at 1823.

Two cases filed in the United States District Court in the Eastern District of New York provide an important, relevant evaluation of the question presented in this appeal. *Magro v. Lentini Bros. Moving and Storage Co.*, 338 F.Supp. 464 (E.D.N.Y.1971) upheld the provisions of the New York statutory warehouseman's lien. It distinguished *Sniadach* on the ground that wages were special property while in *Magro* the property had been voluntarily delivered to

Lentini for storage, notice had been given Magro and he could file suit to protect himself. *Magro* was affirmed and certiorari was denied. *Id.*, 460 F.2d 1064 (2d Cir.), *cert. denied*, 406 U.S. 961, 92 S.Ct. 2074, 32 L.Ed.2d 349 (1972). In 1972, *Hernandez v. European Auto Collision, Inc.*, 346 F.Supp. 313 (E.D.N.Y.1972), was held to be controlled by *Magro v. Lentini Bros. Moving and Storage Co., supra.* However, the Second Circuit reversed, holding that if a substantial dispute existed as to the charges due on the automobile lien, then the sale of the automobile without a prior hearing would contravene due process principles set out under *Sniadach v. Family Finance Corp., supra; Hernandez v. European Auto Collision, Inc.*, 487 F.2d 378 (2 Cir. 1973). Judge Timbers, in a concurring opinion, joined by Judge Lumbard, pointed out that "it is the deprivation of a significant property interest that gives rise to the requirement of a prior opportunity to be heard." *Id.* at 384–85. We also agree with the observation of Judge Timbers that the voluntary delivery of the automobile to the garageman could not be construed as a relinquishment of all property interest therein, as well as an agreement for the sale thereof by auction at thirteen percent of its value.

The about-face in the Second Circuit between *Magro* and *Hernandez* was occasioned by Mr. Justice Stewart's opinion in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). There, the Court held that a right to a prior hearing had "long been recognized," *citing Mullane v. Central Hanover Trust Company*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), *id.* at 82, 92 S.Ct. at 1995, and pointed out:

> For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified" * * *. It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner."

*Id.* at 80, 92 S.Ct. at 1994. (citations omitted).

The Court elucidated on how this should be achieved.

> [T]he Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect . . .
>
> "That the hearing required by due process is subject to waiver, and is not fixed in forms, does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest,· * * * ".

*Id.* at 82, 92 S.Ct. at .1995.

And just as significantly, Mr. Justice Stewart added:

> The [state] statutes, moreover, abdicate effective state control over state power * * *. No state official participates in the decision to seek a writ; no state official reviews the basis for the claim * * * and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The State acts largely in the dark.

*Id.* at 93, 92 S.Ct. at 2001.

Mr. Justice White dissented in *Fuentes* on the ground that replevin of the property was in order during the period from the filing date to the disposition of the case. Thereafter, in *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), Mr. Justice White upheld Louisiana's replevin statute. The issue there concerned possession of the property involved pending trial and the determination of the validity of the debt, the lien and the delinquency. As we have noted, the possession of the Cox bakery equipment is not contested; it was given Timm at the time it was placed in storage. However, the validity of the debt and the warehouseman's lien against the Cox equipment had not been determined. In *Mitchell*, Mr. Justice White only held that it comports with due process to permit the initial taking of possession of the mortgaged property on ex parte affidavits followed by the early opportunity to put the creditor to his proof. We submit that this is a far cry from the facts here where Cox was at the unsupervised mercy of Timm, without any judicial supervision or control whatever, and, as a consequence, has lost his valuable bakery equipment for a song. Certainly, "no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred." *Fuentes v. Shevin, supra,* 407 U.S. at 82, 92 S.Ct. at 1995. Though a wrong may be undone, it does not follow that one may be done.

And now, the question has come full circle in *North Georgia Finishing v. Di-Chem,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Mr. Justice White, writing for the Court, struck down a Georgia garnishment statute that permitted the writ to be issued in pending suits by the court clerk, without participation of the judge, on the basis of a conclusory affidavit of the plaintiff or his attorney. The statute placed the property garnished in the hands of the garnishee during the pendency of the suit, prescribed the filing of a bond as the only method of dissolving the garnishment, and made no provision for early hearing. The opinion is predicated on Mr. Justice Stewart's opinion in *Fuentes v. Shevin, supra,* and distinguishes *Mitchell v. W. T. Grant Co., supra,* on the ground that Louisiana's state statute provided sufficient safeguards while the Georgia one did not.

In light of these cases, we conclude that the case law requires that where a creditor is given authority by the state to unilaterally act on the resolution of legal disputes, his exercise of such authority must be delimited by the restraints of due process. Accordingly, we believe the sale provision of North Dakota's warehouseman's statute is more reprehensible than any of the previously discussed statutes that were struck down and, consequently, does not comport with due process requirements. The deprivation of Cox's property was at all times in the sole hands of Timm, the aggrieved warehouseman. It was the latter

who decided that all of the charges were just, that each was legally secured by his warehouseman's lien, that the sale would be made by auction, and that he would appoint an auctioneer. There was no supervision by any officials, state or local, and no opportunity for Cox to post a bond. His only recourse was to sue for the damages he sustained as a result of Timm's unconstitutional usurpation of his property.

The judgment is reversed and the cause remanded for trial on the merits of Cox's claims as set out in his complaint.